FARMERS WAREHOUSE COMPANY *v.* FIRST NATIONAL BANK OF MILLEDGEVILLE.

HILL, J. 1. The secretary and manager of a corporation, who owns no stock in the corporation and is not otherwise beneficially or pecuniarily interested therein, is qualified to witness an instrument of writing to which the corporation is a party. *Citizens Trust Co.* v. *Butler,* and cases cited, 152 *Ga.* 80 (108 S. E. 468).

2. "Agricultural crops raised by a 'cropper' do not become personalty until they are detached from the soil; and the owner of the land cannot employ the remedy provided in the Civil Code, § 4483, generally applicable for the recovery of the possession of personalty, for the purpose of recovering from the 'cropper' possession of the crops raised by him, while they remain attached to the soil." *Williams* v. *Mitchem,* 151 *Ga.* 227 (106 S. E. 284); Civil Code (1910), § 3617; *Pitts* v. *Hendrix,* 6 *Ga.* 452; *Frost* v. *Render,* 65 *Ga.* 15; *Bagley* v. *Columbus So. Ry. Co.,* 98 *Ga.* 625 (25 S. E. 638, 34 L. R. A. 286, 58 Am. St. R. 335). See also 8 R. C. L. 360, 371, §§ 6, 16; Cobb's Law of. the Farm, 13.

(*a*) A bill of sale to the immature and growing crop, in order to be entitled to record, must have been attested by two witnesses, one of whom is an official witness. Civil Code (1910), § 3257.

3. Applying the principle ruled in headnote 1, and under the allegations of the petition, which are admitted by the demurrer to be true, the plaintiff in the lower court was a bona fide purchaser for value of the cotton, and obtained title thereto as against the vendee in the bill of sale.

4. Where parties to a controversy pending in court enter into the following agreement relatively to the issues involved, to wit: "that the court in his decision on the demurrer provide in his judgment to whom the cotton [in controversy] belongs and the rights of the parties relative-

ly thereto be determined," this is a submission to the court upon the facts alleged in the equitable petition and the issue made by the demurrer of the question of title to the property; and his determination of that question, a judgment being rendered accordingly, is a final determination of the cause upon its merits.

5. The trial judge did not err in overruling the general demurrer to the petition, and, under the agreed statement of facts, in decreeing the title to the cotton in question to be in the plaintiff.

*Judgment affirmed. All the Justices concur, except George, J., who dissents.*

No. 2445. NOVEMBER 17, 1921. REHEARING DENIED DECEMBER 16, 1921.

Equitable petition. Before Judge Park. Baldwin superior court. January 18, 1921.

The First National Bank of Milledgeville, Georgia, hereinafter referred to as the bank, brought an equitable petition against the Farmers Warehouse Company, hereinafter referred to as the warehouse company, and Samuel Evans Sons & Company, hereinafter called Evans & Co., for injunction and other relief. The petition alleged in substance the following: On March 2, 1920, the bank advanced to W. P. Ennis $1042.79, and took as security therefor the promissory note of Ennis payable to the bank, due October 1, 1920. C. W. Ennis, the father of W. P. Ennis, indorsed and guaranteed payment of the note. At the time the bank advanced the money to Ennis it knew that he was a farmer engaged in growing cotton and other crops in Baldwin county, and the money was advanced to him on the faith of the crops as well as on the indorsement of C. W. Ennis; but the bank did not know at the date of the note what lands W. P. Ennis was cultivating. On September 20, 1920, W. P. Ennis delivered to Evans & Co., for the bank, two bales of cotton; and on October 4, 1920, Ennis delivered to Evans & Co., for the bank, six bales of cotton. Receipts were issued to W. P. Ennis on the respective dates for the eight bales of cotton, and were not negotiable. Immediately after the delivery of the receipts to Ennis by Evans & Co., Ennis delivered them to the plaintiff, with instruction to credit the cotton on the indebtedness; and the receipts are now, and have been since that date, in the possession and custody of the plaintiff. Plaintiff accepted the cotton as a credit on its note, but agreed with Ennis as a matter of accommodation to him, with the hope that the price of cotton would advance, to hold the cotton and convert it into cash, which agreement has been fully complied with. Plaintiff " alleges positively and unequivocally that it accepted

said cotton as a payment and credit on said note, and to the extent of the value of said cotton relieved the said W. P. Ennis of all other and further liability on account thereof." Plaintiff is a bona fide purchaser of the cotton, without any notice or knowledge of the facts hereinafter set out. On May 29, 1920, W. P. Ennis, without any knowledge on the part of the plaintiff or his indorser, C. W. Ennis, executed and delivered to the warehouse company an instrument purporting to be a bill of sale upon his entire crop, including cotton raised or to be raised during the year 1920, cultivated by him or by his direction on lands of Mrs. W. P. Ennis; the instrument purporting to convey the title to all of the crops into the warehouse company. The instrument was executed in the presence of, and attested by, R. L. Wall, a notary public of Baldwin County, and was recorded in the office of the clerk of the superior court on June 1, 1920. On June 22, 1920, W. P. Ennis, without the knowledge of plaintiff or C. W. Ennis, executed and delivered another instrument purporting to be a bill of sale, and purporting to convey the title to the same crops covered by the first instrument to the warehouse company. The last instrument was also executed in the presence of, and attested by, the same notary public, and was recorded June 23, 1920. The express consideration of the first instrument was $391, and that of the second instrument was $200. After the cotton was delivered by W. P. Ennis to Evans & Co., on or about October 12, 1920, the warehouse company sued out bail-trover for the eight bales of cotton against Evans & Co., returnable to the January term, 1921, of the superior court of Baldwin County, and at the same time made an affidavit for bail for the cotton. Copy of the suit was served on Evans & Co.; and the warehouse company is demanding that Evans & Co. give the trover bond required by law. Evans & Co. have no interest in the cotton except in so far as insurance and storage charges are concerned, and lay no claim whatsoever to the cotton. The title to the cotton is in the bank, and under the law it has no right to intervene in the trover suit or to give bond for the production of the property or for the eventual condemnation-money. Inasmuch as Evans & Co. have no interest in the cotton and no reason to contest the claim of the warehouse company, plaintiff will be remediless unless a court of equity intervenes. As against the bank

the bills of sale executed to the warehouse company do not constitute any notice, and the records of the same are not notice to the bank, for the reasons, first, that the instruments were executed in the presence of, and attested by, Wall, who at the time of their execution was the secretary and treasurer and general manager of the warehouse company, in full control of its business; and second, that if the bills of sale were valid at all as against the bank, a bona fide purchaser without notice, still their record is not constructive notice to the bank, for the reason that they purport to convey realty, and therefore, to entitle the instruments to record, it was necessary for them to be executed in the presence of two witnesses, one of whom should be a notary public or a justice of the peace. Even if entitled to record so as to be constructive notice to future purchasers, the instruments of the character heretofore set out can not operate as notice, for the reason that it would be impossible for any future purchaser to ascertain from an examination of the record that mature, ginned, and baled cotton was covered by the description in the instruments. Plaintiff had no notice, either actual or constructive, of the existence and execution of the instruments, and it in good faith bought from W. P. Ennis the cotton and credited him with the same upon his note, and to that extent relieved him of further liability thereon, the exact amount to be determined when the cotton is placed upon the market; and the plaintiff relieved, to the extent of the value of the cotton, the indorser on the note, C. W. Ennis. The plaintiff prayed, first, that the warehouse company be enjoined from proceeding further with the trover action until the further order of the court; second, that Evans & Co. be enjoined from giving any bond and from changing the present status of the cotton; third, that the court decree the title to the cotton to be in plaintiff.

The defendant filed a general demurrer to the petition, on the ground that it set forth no cause of action and showed no ground for equitable relief. It was agreed between counsel for all parties that the bail-trover suit, referred to in the petition, be merged into the present suit, that W. P. Ennis, the warehouse company, Evans & Co., and the bank are parties hereto; and that the court in his decision on the demurrer provide in his judgment to whom the cotton in controversy belongs, and the rights of the parties rel-

atively thereto be determined, with the right of all parties to except. It was further agreed that R. L. Wall is not a stockholder in the warehouse company, but is its secretary and treasurer and general manager, and was only that at the time of the execution of the bills of sale by W. P. Ennis; and that this agreement be considered and made a part of the petition in this case. The court, after reciting the above agreement, overruled the demurrer and passed the following order: " Ordered further that the title to the eight bales of cotton in question be and the same is hereby declared to be in the First National Bank of Milledgeville, Georgia." To the judgment the Farmers Warehouse Company excepted.

*D. S. Sanford* and *Sibley & Sibley,* for plaintiff in error.
*Allen & Pottle,* contra.