# Weisenberger *et al. versus* The Harmony Fire and Marine Insurance Company.

1. A policy of insurance, with its clauses, conditions and stipulations, is the law of the legal relation between the parties by which their mutual rights and liabilities are to be understood and measured.

2. In this respect it is, like other contracts, liable to be reformed on account of accident or mistake and set aside for fraud.

3. Latent ambiguity may be explained and terms of art, commerce or trade defined by extrinsic testimony.

November 21st 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the District Court of *Allegheny county :* No. 148, to October and November Term 1867.

This was an action of assumpsit, brought to April Term 1865, by Philip Weisenberger and others, trading as Weisenberger, Fisher & Co., against the Harmony Fire and Marine Insurance Company of New York, on a policy, not under seal, to recover for the loss of a quantity of oil destroyed by fire on the 2d of February, at the Keystone Oil Refinery, Pittsburg.

On the trial the plaintiff gave in evidence the policy, dated April 18th 1864, for insurance to the amount of $4000 " on refined oil in barrels contained in the cellar under the office, and in the yard attached to their premises, occupied by the assured as an oil refinery and for storing oil. Lot in the Ninth Ward, city of Pittsburg, and state of Pennsylvania, as per plan on file in the office of the Beekman Ins. Co., of New York. *Note.—* This policy does not attach to oil in the tanks."

Also, another policy, No. 34,688, of same date for " $4500, for one year, from April 16th 1864 to April 16th 1865, at noon, on crude petroleum contained in three wooden tanks (under ground), viz. $1500 on each tank."

The defendants proved that the insurances were effected by Isaac G. Sproul, who was not the agent of the company, but was engaged in the insurance business ; he sent the applications to B. B. Smith, of New York, who acted on behalf of the company ; Smith got the policies and delivered them to the plaintiffs ; Sproul remitted the premiums to Smith.

They proved also the fire, the destruction of about 2400 gallons of refined amber oil manufactured ; 1000 gallons of machine oil

manufactured; 5 barrels of lard oil, to be used with chemicals to manufacture machine oil; all but the lard oil was in tanks.

The premises were on the Allegheny river, enclosed with a board fence. On the side next the river, and facing it, was a shed, in one corner of which was the office and cellar mentioned in the first policy; a few feet from the office were three tanks, used for settling the refined oil before it was put into barrels. The building containing the machinery was about 16 feet from the shed containing the office and tanks; in the open yard, 75 or 100 feet from the shed were the three underground tanks, containing the crude petroleum insured in the second policy. The amber and machine oil had been manufactured by the plaintiffs; the lard oil was bought from another firm.

The plaintiffs then proposed to prove by Sproul that the note "This policy does not attach to oil in the tanks," referred to and means simply the oil in the tanks as insured in policy No. 34,688, same company, already in evidence, and for which witness made out the application at the same time, and that it was so understood by the plaintiffs and the agent at the time.

Being objected to by the defendants, the offer was rejected, and the court sealed a bill of exceptions.

The defendants offered no evidence, and on motion of their attorney, the court directed a nonsuit, with leave to the plaintiff to move the court in banc to set it aside.

The motion was made, and after argument it was overruled, and the nonsuit directed to stand, Williams, A. J., delivering the opinion of the court, in which he held that oil in tanks was not insured. He said further:

"But lard oil was not the subject-matter of the insurance. Refined oil, only, was insured. Both of these oils are well known articles in commerce, bought and sold in market by their distinctive names. And though they bear some resemblance to each other, they are essentially different in their essence or constituent parts, and in the mode or process of their production. The basis of the one is petroleum or rock oil, 'a liquid inflammable substance or bitumen exuding from the earth,' that of the other is lard, or the fat of swine. The difference between the two oils is apparent on inspection, and one is never bought or sold under the name of the other. The underwriters, then, could not have intended to insure lard oil under the name of refined oil, and for this reason, if the lard oil in question answered the conditions of the contract in other respects, there can be no recovery for its loss."

The plaintiffs took a writ of error, and assigned for error the rejection of the evidence offered by them; ordering a nonsuit and refusing to take it off.

*J. Barton* and *R. & S. Woods*, for plaintiffs in error.

[Weisenberger *v.* Harmony Insurance Co.]

*J. H. Hampton*, for defendant in error, cited Angell on Ins., § 20 ; Alston *v.* Mechs. Mut. Ins. Co., 4 Hill 329 ; Whitney *v.* Haven, 13 Mass. 172 ; 1 Duer on Ins. § 16 ; Higginson *v.* Dall, 13 Mass. 99 ; W. Branch Ins. Co. *v.* Helfenstein, 4 Wright 289 ; Western Ins. Co. *v.* Cropper, 8 Casey 351.

The opinion of the court was delivered, January 7th 1867, by THOMPSON, C. J.—It has been often said that a policy of insurance, with its clauses, conditions and stipulations, is the law of the legal relation between the insurers and insured, by which their mutual rights and liabilities are to be understood and measured : 4 Wright 289. In this respect an insurance is like other contracts, liable to be reformed on account of accident or mistake, and set aside for fraud ; so a latent ambiguity may be explained by extrinsic testimony, and terms of art, commerce or trade defined by the same process. But it is not an exception otherwise to the rule, that its terms must stand, unless for some of the reasons mentioned, it may be moved from the precise terms written.

The proposition below to prove what was meant by the note, " this policy does not attach to oil in the tanks," was inadmissible on every principle. It was not written by mistake, inserted by fraud, nor in the least ambiguous. The proposed proof would have made an entirely different thing out of it from what the collocation of words plainly imported, and without the insurers knowing anything whatever but what it did express.

Without stopping to discuss this assignment further, we think it is not sustained.

Nor do we think the learned judge erred in holding that the lard oil was not included in the policy. We are not sufficiently acquainted with the enclosure to which the policy applied, to say whether it could be fairly included within it or not ; but we think it was not included, because it was known in commerce not as " refined" but as " lard oil." The place and circumstances, show very conclusively, that this was not the kind of oil intended by the policy. The place was an oil refinery, devoted to refining petroleum or rock oil ; and as there would be sometimes more and sometimes less in quantity on hand, the plan of an open policy was adopted to cover, to a certain extent, the oil as manufactured ; not such oils as were bought to be used in the process of refining oil. These considerations serve to render the conclusion more satisfactory, that it was refined oil of the factory, or oil of the same nature, that was intended to be covered by the policy, and that there was no error in holding the five barrels of lard oil as not within it.

There was not a shadow of ground for the claim, that the oil in the cooling and settling tank was included by the terms " *refined oil in barrels*."

[Weisenberger *v.* Harmony Insurance Co.]

To hold this an equivalent expression to "*barrels of oil*," would pervert the contract. As the contract of insurance is the agreement or bargain of the parties to it, it is often surprising that so little attention is paid to details. Parties contemplating insurance ought to know, that what they really agree to, courts cannot relieve them from; and they ought to take counsel, or be well assured of their own ability to contract for themselves in this particular, and then to have what is intended clearly defined. This remark is general; not designed for this case; for we think that the parties to it intended just what the court below said they did; but it is probable that more skilful and thrifty business-men, would have had their insurance in this case, in such form as to have covered the manufactured article, before being barrelled as well as after. This is but conjecture however. As error has not been made manifest in any part of this record, the judgment is affirmed.