## London and Lancashire Fire Insurance Company *versus* Lycoming Fire Insurance Company.

A., a Pennsylvania fire insurance company, had an agency in New York city, known as its "New York Agency," through which it transacted its business for New York state and the New England states. B., also an insurance company, agreed in writing with A. "to pay all losses on all policies issued by A. upon risks in the state of New York only, and not elsewhere," and also, "in order to carry out this agreement, . . . . . to issue to A. one or more policies together re-insuring all their (A.'s) policies as herein stated, as soon as an accurate schedule or schedules of same can be prepared, subject nevertheless to the terms of this agreement." B. accordingly issued to A. several policies of re-insurance, re-insuring "the property hereinafter described, as per schedule annexed." One of these annexed schedules contained a risk taken, and

the policy therefor executed, in the state of New York, by A.'s agent at Malone, N. Y., on the property of C., a citizen of New York, which property was located in the Province of Quebec. Several other risks, taken in New York state on properties situate elsewhere, were included in said schedule. C.'s property, located in Quebec, having been destroyed by fire, A. paid the loss. In an action by A. against B. to recover the amount so paid to C. :

*Held*, that the contract of re-insurance only included risks issued by A. on properties situated in New York state, and not risks taken by A. in New York state on properties located elsewhere.

February 21, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lycoming county :* Of July Term, 1883, No. 216.

This was an action of covenant, by the Lycoming Fire Insurance Company against the London and Lancashire Fire Insurance Company, to recover for a loss sustained by the plaintiff on a policy of insurance issued by them to one Thomas Helm, which risk it was claimed by the plaintiff was re-insured to them by the defendant. Pleas, *non infregit conventiones*, covenants performed, with leave, etc.

By agreement of the parties, trial by jury was waived, and the cause submitted to the court (CUMMIN, P. J.,) under the provisions of the Act of April 22, 1874.

The following were the court's material findings of fact and conclusions of law :

2. The plaintiff was a corporation of the state of Pennsylvania, doing an insurance business in several of the United States. They had an important agency in the city of New York, known as their "New York Agency," through which their business in the state of New York and in some of the Eastern states was done.

3. The defendant was a foreign insurance corporation doing business in the United States.

5. On March 2, 1880, the following contract was entered into by the parties to this suit:

First. The said London and Lancashire Fire Insurance Company agrees to pay all losses occurring after 12 o'clock noon, New York time, this day, on all policies issued or renewed prior to this date by the said Lycoming Fire Insurance Company, on the cash plan, excluding mutual policies, *upon risks in the state of New York only, and not elsewhere,* the consideration being that the said Lycoming Fire Insurance Company will pay to the said London and Lancashire Fire Insurance Company the pro rata gross premium for the unexpired time upon all such policies, as soon as an account of same can be prepared, less a rebate of thirty-two and one-half per cent. on policies on risks outside of New York city and Brooklyn

426 SUPREME COURT [*Philadelphia*

[London, &c., Ins. Co. v. Lycoming Ins. Co.]

agencies, and less a rebate of twenty-five per cent. on policies on risks at New York city and Brooklyn agencies.

Fourth. All daily reports, clips, applications, surveys, diagrams, agency registers, maps, and such other records of the business as may be necessary and useful for the full information and management of the business and adjusting the losses that may occur, shall be delivered to and become the property of the said London and Lancashire Fire Insurance Company.

Sixth. It is further mutually agreed that the London and Lancashire Fire Insurance Company, by its manager or agents, shall take charge of and adjust all losses under the policies and risks hereby re-insured, and that any settlement of such losses made by the said London and Lancashire Fire Insurance Company shall be accepted by the said Lycoming Fire Insurance Company, as so far forth a discharge of the liability of the said London and Lancashire Fire Insurance Company under this contract and the re-insurance policies connected herewith.

Seventh. In order to carry out this agreement the said London and Lancashire Fire Insurance Company agrees to issue to the said Lycoming Fire Insurance Company one or more policies together re-insuring all their policies as herein stated, as soon as an accurate schedule or schedules of same can be prepared, subject, nevertheless, to the terms of this agreement.

6. This contract of re-insurance covered about six thousand seven hundred risks. The daily reports, &c., of these risks were bound up in large books, which contained like data relating to risks which had expired or were cancelled. It thus became necessary that the daily reports, &c., of the risks re-insured should be selected out of these books. For this purpose the books containing the data of the New York business were placed under the charge of the defendant's agent, and clerical force was furnished him to assist in doing this work, to the end that the risks re-insured might be scheduled. Several policies of re-insurance were issued by the defendants to the plaintiffs, to each of which were attached schedules of the risks included in policy to which it was attached.

7. The policies of re-insurance issued by the defendant to the plaintiff, were written on the ordinary policy blanks. The policy of re-insurance on which this suit is brought is substantially as follows:

"London and Lancashire Fire Insurance Company, by this policy of insurance, in consideration of the receipt of twelve thousand six hundred seventy-four $\frac{44}{100}$ dollars, and the representations, covenants, and warranties of the assured hereinafter named, do re-insure Lycoming Fire Insurance Company,

of Muncy, Penn., against loss or damage by fire to the amount of two million five hundred and seventy-two thousand one hundred six $\frac{77}{100}$ dollars. The property hereinafter described, *as per schedule hereunto annexed.*

. . . . . " And the said London and Lancashire Fire Insurance Company hereby agree, out of their capital stock and funds, to make good unto the said insured, their successors and assigns, all such immediate loss or damage not exceeding in amount the sum or sums insured, as above specified, nor the interest of insured in the property, except as herein provided, as shall happen by fire to the property so specified, from the second day of March, one thousand eight hundred and eighty, at twelve o'clock at noon, to the expiration of policies as per schedule attached, at twelve o'clock at noon."

This policy is dated at New York, March 25, 1880. To this policy is attached a schedule consisting of fifty-seven pages, each leaf of which is identified by the signature of the proper officer of the defendants; it contains about two thousand one hundred risks. This schedule is in the following form, and among others contains the following risk:

"Unexpired risks of Lycoming Insurance Company, of Muncy, Penn., re-insured in the London and Lancashire Fire Insurance Company, of Liverpool, March 2, 1880.

. . . . . . . . . . . . .

| | |
|---|---|
| No. of policy, . . . . . | 620,671. |
| No. of renewal, . . . . . | 17,240. |
| The assured, . . . . . | Thomas Helm. |
| Risk, . . . . . . . | Grist Mill. |
| Location, . . . . . . | Trout River. |
| Date, . . . . . . . | 1 year. |
| Expiration, . . . . . | Dec. 1, 1880. |
| Amount insured, . . . . . | $2,250. |
| Last premium, . . . . . | $45. |
| Unexpired time, . . . . . | 276 days. |
| Prem. for unexpired time, . . . | $3,425." |

. . . . . . . . . . . . .

8. Trout River is the name of a small stream which rises in Franklin county, in the state of New York, flows northerly through a portion of the Province of Quebec, and empties into the St. Lawrence. On this river, in the state of New York, is a place called Trout River, and further northward, on this river, is a place called Elgin, in the Province of Quebec, Canada. The place of business and post-office of Thomas Helm, is Trout River, New York. The property insured by the policy above recited was his stone grist mill, and certain

personal property therein contained, situate in Elgin, the Province of Quebec, Canada. This policy of re-insurance was executed and delivered, and is dated at Malone, New York. It was a part of the business of the plaintiff at their agency at the town of Malone, in the state of New York.

March 26, 1880, the property covered by this policy of insurance was destroyed by fire, and on August 7, 1880, the plaintiff paid Thomas Helm $1,862.62, in full settlement of his claim for loss by fire under this policy.

This action is brought to compel the defendant to re-insure or make good the plaintiff for the money paid to Thomas Helm as aforesaid. The defendant defends on the ground that the property destroyed was not situated in the state of New York.

9. Several other risks made in New York on property located in Canada, were scheduled and re-insured by the defendants. After the Helm property was destroyed an effort was made by the defendant to pay back to the plaintiffs the amount paid by them for such re-insurance. Such re-payment was not accepted by the plaintiffs.

The contract between the parties was negotiated by Wm. A. Krouse, on behalf of the plaintiffs, and by Joseph B. Phelps, on behalf of the defendants. Krouse testifies that it was distinctly understood that defendants were to re-insure all their New York business just as it then existed: that is, all their risks taken in the state of New York, all risks taken by their agents in the state of New York. Phelps testifies that the contract was to cover only risks on property situate in the state of New York.

The word "risk" and the words "policies of insurance," are used as synonymous terms in the 6th and 7th paragraphs of the contract of March 2, 1880.

10. All the points or requests in writing submitted by plaintiffs' counsel and hereto attached are affirmed, except the 5th finding of fact, which is refused.

11. All the points or requests in writing submitted by defendant's counsel and hereto attached are affirmed, except the 7th, 8th and 10th, which are refused.

12. There is no evidence in this case that the Thomas Helm hazard was in any way increased because his property was situate in Canada. Nor is there any evidence in the case that the rights of the defendant were in any way imperilled, impaired, or injuriously affected because the property of Thomas Helm was located in Canada.

13. After a careful examination of the law and facts of this case, I find: That the Thomas Helm risk is included in the policy of re-insurance on which this suit is founded, and was

intended to be re-insured by the parties. That there is no such concealment, false statement, false representation, fraud or mistake shown in this case as would or ought to relieve the defendants from their liability to reimburse and make good to the plaintiffs the amount of money they have paid on the Thomas Helm risk, viz: the sum of one thousand eight hundred and sixty-two $\frac{62}{100}$ dollars, with interest from August 7, 1880.

It is therefore ordered, adjudged and decreed that judgment be entered in this case in favor of the plaintiffs and against the defendants, for the sum of two thousand one hundred and sixty-nine $\frac{65}{100}$ dollars, subject nevertheless to exceptions which may be hereafter filed and re-hearing had according to law.

Among the points submitted by the plaintiff, which were affirmed by the court in its tenth finding of fact, were the following:

The location of this risk is immaterial, as there is no evidence showing that there was any greater hazard by reason of its location, than if the property had been located in New York. Affirmed.

That the sentence in the contract of March 2, 1880, "Risks in New York and not elsewhere," has reference not to the property insured nor to its location, but to contracts of indemnity against loss by fire made by the agents of the company plaintiff through its New York general agency, and in this case with a citizen of said state, and it is immaterial where the property described in the policy was located. Affirmed.

That parol evidence is admissible to explain the subject matter of any written instrument, and where a stipulation is entered into by word of mouth at the time of the execution of the written contract, parol evidence is admissible, although it may materially change the terms of the contract. Affirmed.

Among the points submitted by the defendants, and referred to in the eleventh finding of the court, were the following:

That there is no sufficient and competent evidence to vary, add to, or contradict the terms of either the contract of March 2, 1880, or the policy of re-insurance sued upon. Affirmed.

That under all the evidence in this case the plaintiff is not entitled to recover, and the judgment must be for defendant. Refused.

Exceptions filed by the defendant to these findings of law and fact, were overruled by the court, and judgment was entered for the plaintiff. The defendant thereupon took this writ of error, assigning as error the ninth, tenth, eleventh and thirteenth findings of the court as above.

*R. P. Allen* and *Henry C. McCormick*, for the plaintiff in error.

*H. W. Watson* (*John J. Metzgar* with him), for the defendant in error.

Mr. Justice TRUNKEY delivered the opinion of the court, March 3, 1884.

The learned judge of the Common Pleas rightly ruled, "That there is no sufficient and competent evidence to vary, add to, or contradict the terms of either the contract of March 2, 1880, or the policy of re-insurance sued upon." That was consistent with the plaintiff's (defendant in error) fifth legal proposition, for while parol evidence is admissible to change the terms of a written contract, that adduced may be insufficient. Then the contract between the parties must be construed by the court, uninfluenced by the conflicting statements of the only two witnesses examined, respecting their conversation at and before the time of its execution.

By the first paragraph of the agreement the defendant agreed to re-insure the plaintiff against all losses on all policies issued or renewed by the plaintiff on the cash plan, upon risks in the State of New York only, and not elsewhere, the consideration being the pro rata gross premium for the unexpired term upon all such policies, less a rebate of thirty-two and one-half per centum on policies on risks outside of New York City and Brooklyn agencies, and less a rebate of twenty-five per centum on policies on risks at New York City and Brooklyn agencies. It is obvious that the words " policies" and " risks" are not used synonymously, that policies mean the instruments in which the contracts of insurance are embodied, and risks mean the hazards at the places where the property insured is located. The re-insurer agreed to pay the losses on policies, contracts, upon risks in the State of New York, and in fixing the amount of premium a certain rebate was to be made on policies on risks outside of New York and Brooklyn agencies, and a different rebate on policies on risks within the agencies of those cities. It would be difficult, to define the location of the risks in more specific and unambiguous terms. Re-insurance is a contract of indemnity, and binds the re-insurer to pay to the re-insured the loss sustained in respect to the subject insured to the extent for which he is re-insured: May on Ins., § 11. That subject was expressed by the word "risks," and the surveys, diagrams and maps which were to be delivered by the re-insured to the re-insurer had special reference to the situation of the risks. The provisions of the sixth and seventh paragraphs refer to the policies and risks which are the subjects of the contract, as set

forth in the first, and cannot be construed otherwise. These paragraphs contain no definition of limits; they are parts of the instrument, and refer to "the policies and risks hereby re-insured," or "as herein stated." To rule that in these paragraphs the words " risk " and "policies of insurance" are used as synonymous terms was erroneous, and the plaintiff's seventh point of facts and second legal proposition should have been refused.

Policies of re-insurance were duly issued, and both parties claim that they were intended to be in entire accord with the contract. The policy on which this suit is founded relates to about twenty-one hundred risks, and the risk for which the re-insured seeks to recover was described as located at Trout River, a town in the State of New York, but the actual location of the risk was at Elgin, in the Province of Quebec, Canada. The re-insurer had no knowledge or notice that the risk on the property of Thomas Helm was outside the State of New York until some time after said property was destroyed. From these facts in connection with the contract and the policy of re-insurance, it was error to infer and find, " That the Thomas Helm risk is included in the policy of re-insurance on which this suit is founded, and was intended to be re-insured by the parties." On the contrary, no risk without the State of New York was included, or intended to be included, and the defendant's tenth point should have been affirmed, namely, " That under all the evidence in this case the plaintiff is not entitled to recover, and the judgment must be for defendant."

The parties by their contract made location of the risk material, for unless within certain lines it was excluded. They have not stated the reasons for such exclusion, and the reasons are wholly unnecessary to the determination of any point in this action. It is likely true, let it be taken as true, that if the property were located in any of the United States, or anywhere in the Dominion of Canada, that the danger of destruction by fire would be no greater than if within the stipulated lines; but the re-insurer did not choose to undertake to look after risks, or make proper investigation in case of loss on risks, located without those lines. If there is no evidence that the Thomas Helm hazard was in any way increased because his property was situate in Canada, why should the re-insurer be held liable for the loss in defiance of the contract? If a risk beyond the defined limits, without the knowledge of the insurer, may be included by accident or design on the part of the insured, one party, by accident or design, can gain more than was bargained for, and to that extent the other must lose. The clearly expressed intent

shall prevail. It is enough that the risk upon the Thomas Helm property in Canada was not within the State of New York. Whether it be greater or less, or equal, is a question of no pertinency in the construction of the written instruments.

Were the risks within the contract, and false representations had been made respecting its location, it would be necessary to notice the assignments of error relative to the rulings in regard to such representations, and the warranty.

Judgment reversed.