# City Club of Philadelphia and Northeast Philadelphia Chamber of Commerce and William W. Roper, Appellants, v. The Public Service Commission of Pennsylvania and City of Philadelphia and Philadelphia Rapid Transit Company, Intervening Appellees.

*Municipalities—Ordinances—Sufficiency of title—Contracts pursuant to ordinance—Validity—Constitution of Pennsylvania, Article IX, section 7—Act of June 25, 1919, P. L. 581, Article XVI, section 6—Act of June 17, 1913, P. L. 520, section 3.*

The City of Philadelphia passed an ordinance entitled "An Ordinance to authorize and direct the execution of a contract between the City of Philadelphia and the Philadelphia Rapid Transit Company for the leasing by the city to said company of a two track surface car subway proposed to be constructed by the city upon the route therein described." The contract authorized by the ordinance provided for the leasing of the subway to be built under Chestnut and Walnut streets to the company for fifty years. It also provided that at the end of the term the company should have such rights as it or any of the companies from which it held leases had in the surface of Walnut and Chestnut streets. One of these companies had a perpetual franchise to operate in these streets.

Such a contract involves a grant in excess of a leasehold estate.

Where the title to such an ordinance fails to state that any interest greater than a leasehold was authorized, it is insufficient under the Act of June 25, 1919, P. L. 581, Article XVI, section 6, requiring that no bill shall be passed (by city council) containing more than one subject, which shall be clearly expressed in its title.

An order of The Public Service Commission approving a contract made pursuant to such defective ordinance will be reversed.

A contract to lease to a corporation a subway constructed for a city on plans and specifications approved by the corporation, at a rental under which the corporation pays quarterly, during the fifty years, the interest, state taxes and instalments sufficient to liquidate the total principal of the bonds issued by the city to finance the construction is not a loan of its credit to a corporation such as is prohibited by Article IX, section 7 of the constitution.

The provision of the Act of June 17, 1913, P. L. 520, section 3, requiring that construction of transit facilities under municipal agreement shall begin within eighteen months from the date of said agreement does not apply where the city undertakes the construction. Where the agreement states that the transit company shall commence operation of the property as soon as it is completed and ready for operation, the time set for beginning is within such defined, fixed and reasonable period as is required by the statute.

Argued October 21, 1927.  Appeals Nos. 167 and 175, October T., 1927, by City Club of Philadelphia, North East Philadelphia Chamber of Commerce and William W. Roper, from report and order of the Public Service Commission of the Commonwealth of Pennsylvania, Municipal Contract Docket 2889, 1925, in the cases of City Club of Philadephia and Northeast Philadelphia Chamber of Commerce v. The Public Service Commission of the Commonwealth of Pennsylvania, and City of Philadelphia and Philadelphia Rapid Transit Company, intervening appellees, and William W. Roper v. Same.  Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.  Reversed.

Application for approval by The Public Service Commission of a contract to lease a subway from a municipality.

The facts are stated in the opinion of the Superior Court.

The Commission issued an order approving the contract.

The City Club of Philadelphia, Northeast Philadelphia Chamber of Commerce and William W. Roper appealed.

*Error assigned* was the order of the Commission.

*Harold Evans,* of *MacCoy, Evans, Hutchinson & Lewis,* for appellant.—The contract violates the Act of June 17, 1913, P. L. 520: City of Somerset v. Smith, 105 Ky. 6778, 49 S. W. 456; Commonwealth v. Philadelphia Rapid Transit Co., 237 Pa. 70; Passyunk Ave. Business Men's Association v. Public Service Commission, 73 Pa. Superior Ct. 242; Beach Modern Law of Contracts, Section 1148; Blaschko v. Wurster, 159 N. Y. 437, 51 N. E. 303; Hendrickson v. City of New York, 160 N. Y. 144; Buffalo Clean Street Co. v. City

of Buffalo, 188 N. Y., 604; Davies v. Town of Harrison, 48 N. J. L. 79; Taylor v. Lambertville, 43 N. J. Eq. 107; City of Wellston v. Morgan, 59 Ohio State 147, 52 N. E. 127; Gas Co. v. Ironton, 107 Ohio State 173; Manhattan Trust Co. v. City of Dayton, 59 Fed. 327; Gas Light etc. Co. v. City of New Albany, 156 Indiana 406, 59 N. E. 176; Clay Center v. Light Co., 78 Kansas 390; Village of Morrice v. Sutton, 139 Mich. 63; Endlich Interpretation of Statutes, Section 352; McCormick v. Hanover Township, 246 Pa. 169; Minturn v. Larue, 23 How. (U. S.) 435, 16 L. ed. 574.

The contract violates the Constitution of Pennsylvania, Article IX, section 7: Lord v. Denver, 58 Col. 1; Wheeler v. Philadelphia, 77 Pa. 338; Murphy v. Dever, 320 Ill. 186; State v. Cincinnati Street Railway Company, 97 Ohio St. 283; Cincinnati v. Harth, 101 Ohio St. 344; Sun Printing Ass'n. v. New York, 152 N. Y. 257; Admiral Realty Company v. New York, 206 N. Y. 110; Syracuse R. R. Co. v. City of Syracuse, 183 N. Y. S. 757; Town of Mamaroneck v. N. Y. Water Co., 212 N. Y. S. 639; Brooke v. Philadelphia, 162 Pa. 123. The title to the ordinance is insufficient: Hamilton Ave., 48 Pa. Superior Ct. 156; City of Pittsburgh v. Phelan, 85 Pa. Superior Ct. 548; Commonwealth v. Kebort, 212 Pa. 289.

*Joseph P. Gaffney,* City Solicitor, and with him *John B. Gest* and *Ernest Lowengrund,* Assistant City Solicitors, for the City of Philadelphia, Intervening appellee.—The contract does not violate the Pennsylvania Constitution, Article IX, section 7. The title to the ordinance gives sufficient notice of its contents: Graeff v. Schlottman, 287 Pa. 342.

*Frederic L. Ballard,* of *Ballard, Spahr, Andrews & Ingersoll,* for the Philadelphia Rapid Transit Company, Intervening appellee.

*John Fox Weiss,* Counsel, and with him *Wendell Y. Blanning,* Assistant Counsel, and *E. Everett Mather, Jr.,* for the Public Service Commission, cited: West-side Electric Street Railway Company v. The Public Service Commission of the Commonwealth of Pennsylvania, 91 Pa. Superior Ct. 162; Bethlehem City Water Company v. Public Service Commission, 70 Pa. Superior Ct. 499; Solar Electric Company v. Public Service Commission, 88 Pa. Superior Ct. 495; Reiber v. Public Service Commission, 83 Pa. Superior Ct. 507; Hege v. Public Service Commission, 86 Pa. Superior Ct. 558; United Lighting Co. v. Public Service Commission, 84 Pa. Superior Ct. 24; Brookville v. Solar Electric Company, 88 March T., 1927, Supreme Court, Western District (Not yet reported); Relief Electric L. H. & P. Co.'s Petition, 63 Pa. Superior Ct. 1.

OPINION BY LINN, J., February 3, 1927:

This appeal is from the order of the commission approving a contract by the Philadelphia Rapid Transit Company and the City of Philadelphia, providing inter alia, for the lease by the city to the company of a two track surface-car subway to be constructed by the city on a certain route in Chestnut and in Walnut Streets, and two supplemental contracts made by the city, the Philadelphia Rapid Transit Company and— as parties of the third part—The Philadelphia City Passenger Railway Company, The West Philadelphia Passenger Railway Company, The Philadelphia Traction Company and the Union Traction Company, hereafter designated "lessors."

Briefly stated, the purpose of the city and the Transit Company is to remove the street car tracks and equipment from the surface of parts of Chestnut and Walnut Streets, and permanently to substitute therefor in those streets a subway or underground street railway for the operation of street cars. To accom-

plish that purpose, the three contracts were executed pursuant to ordinances so providing and these ordinances and contracts were submitted to the commission on petitions of the Philadelphia Rapid Transit Company for a certificate of public convenience: Sec. 11, Art. III, 1913, P. L. 1374, 1395. Protests were filed by the Northeast Chamber of Commerce, and by the City Club of Philadelphia. Hearing were held and evidence was received. Both protestants and W. W. Roper, a resident of Philadelphia, who appeared before the commission, have appealed. They state three questions for review:

"(1) Do they [the contracts] violate the Act of June 17, 1913, P. L. 520?"

"(2) Do they constitute a loan of the City's credit to the Company in violation of Article IX, Section 7 of the State Constitution?"

"(3) Is the title of the Ordinance of February 2, 1925, authorizing the contract of February 18, 1925, sufficient?"

The Philadelphia Rapid Transit Company is incorporated under the Act of March 22, 1887, P. L. 8, as a motor power company for the purpose of leasing and operating street railways; it operates the street railway system in Philadelphia.

Of the "lessors" named in the supplemental agreements as parties of the third part (Philadelphia City Passenger Railway Company, West Philadelphia Passenger Railway Company, Philadelphia Traction Company and the Union Traction Company) the first named appears to have leased its railroad property and franchises to the second, the second to the third, the third to the fourth, which in turn leased to the Philadelphia Rapid Transit Company. Those leases include certain property and franchises for the operation of a street railway on Chestnut and Walnut Streets within the termini of the proposed subway.

The record does not disclose the term of those leases, but one of the briefs states that the first named,— Philadelphia City Passenger Railway Company, has a perpetual franchise to maintain and operate a railway on those streets.

Of the three questions submitted by appellants, we shall first discuss the third: "Is the title of the Ordinance of February 2, 1925, sufficient?" The contract of February 18, was made pursuant to that ordinance, which prescribed the form of the contract.

The title is: "An ordinance to authorize and direct the execution of a contract between the City of Philadelphia and the Philadelphia Rapid Transit Company for the leasing by the City to said Company of a two track surface car subway proposed to be constructed by the City upon the route therein described." The discussion centers on the words "for the leasing"; what subject of legislation do they clearly express? Does the form of contract prescribed in the ordinance involve a grant in excess of a lease for fifty years?

The so-called city charter,—the Act of June 25, 1919, P. L. 581, Art. XVI, Sec. 6, P. L. 603, provides " . . . . . . and no bill shall be passed [by City Council] containing more than one subject, which shall be clearly expressed in its title." As that is the language of Art. III, Sec. 3 of the Constitution of Pennsylvania, we examine the ordinance in the light of the decisions construing that constitutional requisite of valid legislation to ascertain whether the City Council legislated on a subject clearly expressed in the title, or whether the ordinance purports to include in the legislation a subject not there clearly expressed.

Apparently the only subject clearly expressed is "for the leasing" of a subway to be constructed by the city on a given route. Appellees contend that the words "for the leasing" cover all obligations incurred and all rights reserved and granted by the city in the

proposed contract. Appellants contend that the contract is not only a lease of the subway for fifty years, but also the grant of a perpetual license or right to use it after the expiration of the fifty years term (because the franchise of one of the lessors is perpetual); that the title to the ordinance gives no notice of the grant of such perpetual license to use the subway or of a sale or gift of it.

The contract contains the following: The petitioner is "To have and to hold the premises hereby leased and demised for a term commencing upon the date when the said subway is completed and ready for operation and continuing for the full term of fifty (50) years, subject, however, to be terminated as hereinafter provided" (in contingencies not now material to this discussion).

A subway is a transit facility within section 1 of the Act of 1913, supra, P. L. 520. Section 2 authorizes the city to construct a subway. Section 3 confers authority "to sell, pledge or lease" it to any corporation authorized to operate it (Com. v. Philadelphia Rapid Transit Co., 287 Pa. 70) "Provided no such lease, license, or operating agreement shall be for any period longer than fifty years ......"

A lease of the proposed subway for the term of fifty years from its completion is therefore authorized by the statute, and the contract clearly provides for such a term. If nothing more were granted, if at the end of the term the subway reverted to the city, freed of other provisions of the contract which shall be mentioned, appellants would have no basis to assert that the subject of the legislation was not clearly expressed in the title. But they point to an additional provision —enlarging the term of fifty years quoted above from the habendum,—a provision which gives or sells to or licenses the petitioner to use the subway perpetually thereafter. That provision is as follows: Para-

graph 12 ''Whenever the company shall have made all rental payments hereunder provided for, such right and title to the demised permises shall thereupon vest in the company that it shall thenceforth at all times thereafter have the same rights to use the subway for itself and any other companies to which it has suc cceded by lease or otherwise, that it and they now enjoy upon the surface of Chestnut and Walnut Streets, and the City shall and will execute and deliver such further assurances as may be reasonably required fully to effectuate such rights.'' As stated before, one of these lessor companies has a perpetual franchise.

In paragraph 7, part (c) the same element is referred to in a provision concerning the removal of tracks and equipment from the surface of Chestnut and Walnut Streets, stating that the surface tracks so removed ''shall not be relaid or reconstructed during the period of this lease or during any subsequent period of use of the subway ......'' And in paragraph 3 petitioner ''agrees at all time during the period of this lease and during any subsequent period of use to maintain [it] in proper and usable condition ......''

As a lease or license, or one plus the other, for a period in excess of fifty years is prohibited by the statute, the city and the company cannot now agree that at the end of the fifty year term a license for any future period shall begin; for that reason, if the perpetual extension contained in this contract is now construed to be a license, the contract is prohibited and this discussion would be ended. But as appellees contend that the contract constitutes a sale of the subway, effective from the end of the fifty year term, we shall consider the title of the ordinance in that view of the contract, for of two possible interpretations, one legal and one illegal, the former should be adopted

for the purposes of this discussion, though we do not thereby decide because we are not required to decide that the contract constitutes a sale.

At the hearing before the commission this phase of the proposed transaction became the subject of an inquiry addressed to the learned City Solicitor who thus construed the contract: "After the fifty years have elapsed then they [the Philadelphia Rapid Transit Company] have the right to run through there without any additional cost until the city exercises the right which it has under the 1907 agreement [City Ordinances 1907, pp. 153, 163] to take it over "at a price, after 1957 or on any subsequent July 1st; (while this 1907 agreement is not in the record, it is a matter of such common and general knowledge in the community, of public discussion and some litigation, City v. Philadelphia Rapid Transit Co., 224 Pa. 554, Brode v. Philadelphia, 230 Pa. 434, that we may perhaps take judicial notice of it: Wood's Est., 272 Pa. 8, 15 R. C. L. pp. 1058, 1125). In the City's brief it is said that the provision to use the subway after the expiration of the fifty year term "is plainly in the nature of a sale and as such plainly within the scope of the authority conferred on the City by the Act of 1913." In the Transit Company's brief, it is said "at the end of the term, if and when it shall have repaid to the City the full cost of the subway [the rental prescribed] it is to acquire right and title therein so that it may use the subway thereafter without further payment."

It is obvious that the City agrees to part with its title to a lessee for a term of fifty years and for as much longer as in the words of the contract "any other companies [the lessors] to which it [The Transit Company] has succeeded by lease or otherwise ...... [may] now enjoy upon the surface of Chestnut and Walnut Streets and the City shall and will exe-

cute and deliver such further assurances as may be reasonably required fully to effectuate such rights.'' It is immaterial, in determining the scope of the title to the ordinance, whether the proposed transaction be understood to create a lease for fifty years plus a contract (to quote the City's brief) ''in the nature of a sale'' of the subway, effective from the end of the term, or whether, in the words of the Transit Company's brief, the lessee acquires for enjoyment after the term of the lease such ''right and title therein so that it may use the subway thereafter without further payment.'' In any view the City parts with the subway for a term of fifty years by lease,—a subject clearly expressed in the title; but both of the briefs quoted agree that the City also parts with the subway from the end of the fifty year term for a period measured by the term of the franchise of the Transit Company's lessors, i. e. perpetually; of that license, gift or sale no notice of any kind is given in the title.

If the city had intended to sell or otherwise forever part with the subway, the title to the ordinance should have and easily could have so stated. The word lease as distinguished from sale, implies a parting with the title for a limited term only, and when that word is used in a legislative title required clearly to express the subject of the legislation (especially at a time when a lease exceeding fifty years is prohibited) an inquirer would not expect to find in the ordinance any provision parting with the subway forever. Between a lease and a sale, there are obvious essential substantive differences resulting in totally different rights, obligations and consequences legal in character. In argument it is said that as ''every lease involves a reversionary interest'' anyone would read the ordinance to see what became of the reversion at the end of the term. To us the inference is just the contrary; at the end of the term, the owner steps in; the reversion

to him would be taken for granted; unless the title clearly states that the subject of legislation is the disposition of the property after the term of the lease, one may assume that the owner will then take possession.

A familiar principle of construction applied to the same words in the constitution condemns the title to this ordinance.   The title to the Sales Act is "An act relating to the sale of goods."   Section 4 regulated the "sale of any goods or choses in action ......." Shares of corporate stock are choses in action.   Did the title "relating to the sale of goods" give notice that shares of stock,—i. e. choses in action—would be dealt with in the statute?   The Supreme Court held that it did not, saying: "...... for the question of constitutionality is not to be adjudged by determining whether or not the words of a title may be broad enough to include a particular clause of the act, but whether or not the statutory provision is clearly expressed in the title, so that any one reading it may at once understand the scope of the act."   Guppy v. Moltrup, 281 Pa. 343, 346.   In Pittsburgh v. Phelan, 85 Pa. Superior Ct. 548, 550, we applied that principle and held that the title to an act "providing when, how, upon what property, and to what extent, liens shall be allowed for taxes, and for municipal improvements ......" did not give notice of legislation authorizing municipal liens for water rent.   In Com. v. Kebort, 212 Pa. 289, it was held that the title of an act "to provide against the adulteration of food ......" did not clearly express an intention to legislate concerning drink; see also the discussion of the subject in Provident L. & R. Co. v. Hammond, 230 Pa. 407, 411, etc.   In Dorsey's Appeal, 72 Pa. 192, of particular interest in the present discussion, the title to the act was "relating to the liens of mechanics, material men and laborers upon leasehold estates and

property thereon ......'' One section of the act applied to freeholds and was held inoperative because no notice was given in the title. The court said ''........ the Legislature has, by the title of the act, clearly confined the lien to leaseholds. This description ex vi termini excludes estates of a higher grade. The second amendment to the Constitution, adopted in 1864, provides that ''no bill shall be passed by the Legislature containing more than one subject, which shall be clearly expressed in the title, except appropriation bills.'' The word 'subject' has a large signification, often embracing different kinds, different classes, and various modes, all belonging to the general subject. The word estates is itself an example, embracing fees, fee tails, estates for life, and estates for years, commonly called leaseholds. Had the qualifying term 'leaseholds' been omitted in this title, all the various kinds of estates of freehold would have been comprehended within the title, and the sale of a freehold interest under the lien would have been good. Mere generality of meaning in the title ought not to avoid a law. ...... But a restriction in a title, which tends to mislead, stands on a different footing ...... Another purpose was to give information to the members or others interested, by the title of the bill, of the contemplated legislation; and thereby to prevent the passage of unknown and alien subjects, which might be coiled up in the folds of the bill ...... But on the other hand the title should be so certain as not to mislead ...... To be 'clearly expressed' certainly does not mean something which is dubious, and therefore is not clearly expressed. If then the title seems to mean one thing while the enactment as clearly refers to another, it cannot be said to be clearly expressed. Now in the present case the words leasehold estates certainly do not express estates of freeholds. Perhaps a very cautious man might look into the body of a bill with

this title to see whether other articles were embraced in it, but certainly only a few persons would think it necessary. We think the title does not even point to freehold estates, and therefore that the sixth section of this act is not constitutional."

Frequently the part of a statute of which notice is given in the title can be disregarded and the rest enforced as nevertheless obviously in accord with legislative intention. But if the title does not clearly express a subject, vital to the entire act, and indicating or implying an apparent intention that the lawmaker would not have legislated on what is clearly expressed without also including in the statute or ordinance the provisions of which notice is not given in the title, the whole statute falls. Com. ex rel. v. Samuels, 163 Pa. 283; Stegmaier v. Jones, 203 Pa. 47, 50; Minsinger v. Rau, 236 Pa. 327, 336. The record in this case leaves no doubt that the defect stated is vital.

All the judges of this court agree that the title to the ordinance is defective in not clearly expressing that the subject of the legislation is a contract whereby the City parts with the subway forever, or grants a perpetual license therein.

The disposition of this appeal might rest on that conclusion, but as the defect can be corrected by subsequent legislation, it may not be undesirable to notice the other two questions raised.

2—"Do the contracts constitute a loan of the City's credit to the company in violation of article IX, section 7 of the Constitution?" The provision is: "The General Assembly shall not authorize any ...... city ...... to loan its credit to any corporation." The argument is that the contract is within that prohibition because the subway is to be constructed by the City on plans and specifications approved by the company and rented to the company at a rental by which the company pays quarterly during fifty years the interest,

state tax and installments sufficient to sink the total principal of the bonds issued by the City to raise the money needed to pay the cost of the subway, estimated at $20,000,000, which the City can borrow at lower interest rates than the company, considered in connection with the fact that at the end of the term, the company obtains the perpetual right to use and operate the subway. To support that view, appellants cite cases decided in other states which would merit careful consideration if the point were open here. But for this court, the decision in Brooke v. Philadelphia, 162 Pa. 123, is conclusive against them.

3—"Do the contracts violate the Act of June 17, 1913, P. L. 520?" Appellants contend that the contract of February 18, 1925 violates the act (1) by not requiring that the construction of the subway by the City "shall begin within eighteen months from the date of said agreement and be completed within a fixed time designated in said agreement"; (2) by not requiring that the "actual use or operation of [the subway] shall begin within a definite, fixed and reasonable time"; (3) by creating, in the words of the brief, "a lease, license or operating agreement for more than .fifty years" contrary to section 3 of the Act of 1913.

The requirement that construction begin within eighteen months does not apply if the City constructs the subway; that provision is applicable if the City authorizes such construction by another; the City has decided to construct it, and has obtained from the commission its certificate of public convenience issued April 29, 1924. The provision that the Transit Company shall "commence operation of said property as soon as it is completed and ready for operation," is "within a definite, fixed and reasonable time" as required by the statute. There is nothing in those objections.

The Act of 1913, does not prohibit a sale effective in the future. If the term of a lease is lawful, and if the City intends to make a sale effective from the end of the term of the lease, a provision to that effect will perhaps not constitute a violation of the Act of 1913. If the right to use the subway after the expiration of the lease be considered a license, the contract is prohibited. As the effect of our conclusion concerning the title of the ordinance requires a reversal, we assume that the ambiguity in the expression of the intention of the parties with regard to the subway after the fifty year period will be replaced by more exact statement.

When that contract of February 18, 1925 was presented for approval the commission suggested that "the underlying or owning company" possessing the franchise to own and operate a street railway on Chestnut and Walnut Streets should be brought in. Accordingly the Transit Company filed a supplemental petition, alleging that the City had passed two supplementary ordinances pursuant to which agreements had been made with the underlying companies—the lessors —and that approval of those contracts was desired; such approval was included in the order from which this appeal comes.

The Act of May 3, 1905,* P. L. 379, authorizes cities and certain companies to contract for the removal of surface street railway tracks "for a period not exceeding fifty years ...... and such contract may also provide for the laying and relaying of such tracks, upon such terms and under such contingencies and conditions as may be agreed upon." Pursuant to that statute the supplementary contract under ordinance of July 21, 1925, was made by the City of Philadelphia of the first part, the Philadelphia Rapid Transit Com-

---

* Repealed as to boroughs, May 14, 1915, P. L. 312, 468, and as to townships, July 14, 1917, P. L. 840, 978.

pany of the second part, and the four companies, lessors, already named, of the third part. In it the lessors consent to the removal of the surface tracks on conditions within the Act of 1905; it provides that nothing in it shall alter, amend or annul the agreement of July 1, 1907, supra, and that if the City under paragraph 11 of that agreement elects to acquire the property of the Philadelphia Rapid Transit Company the City shall acquire "the entire interest of [Philadelphia Rapid Transit Company] in said subway as defined and provided for in said subway lease as amended by this agreement," and that the agreement shall not prevent the City from condemning the "said surface subway railway and all the rights and privileges hereby conferred upon all or any of the companies who are parties to this agreement ......"

The two supplemental contracts provide for the removal of the surface tracks and equipment for the term of fifty years (saving the lessors' rights to relay and operate on the surface in specified contingencies which need not now be set forth). One agreement provides: "Prior to the expiration of the forty-eighth year of the term the city and the said companies may provide by a new agreement for the continuance of the removal of the said street railway tracks and overhead trolley system for an additional or further period beyond the term of this agreement; should they fail so to agree, the said companies may, at the end of the forty-eighth year or at any time thereafter, without further consent or permission, enter upon the portions of Chestnut Street and Walnut Street from which the tracks shall have been removed as aforesaid, or any part thereof, and reconstruct the said street railway tracks and overhead trolley system, and thereafter maintain and use the same with all the rights, powers and privileges now vested with respect thereto."

In our view, neither the City's right to purchase

the entire transit system and property in 1957, or on any July 1st thereafter, said to be conferred by the contract of 1907, supra, nor the City's right to condemn it under present or future legislation supply the defect in the title to the ordinance of February 2, 1925; nor can it be said that the possibility that before the expiration of the fifty year term, the City may purchase the transit system under the contract of 1907, or acquire it by condemnation under present or future legislation render any more certain the ambiguity pointed out in the contract of February 18, 1925.

The order is reversed.