Downing et al. *v.* Erie School District et al.,
Appellants.

Argued May 15, 1929.   Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ.

*H. S. Knight,* of *Knight, Taggart, Klein & Reich,* with him *English, Quinn, Leemhuis & Tayntor,* for appellant, School District of the City of Erie.—The school district by reason of insuring its property in a mutual fire insurance company does not loan its credit: Jarrett v. Moberly, 13 Fed. 366; Speer v. Blairsville S. Directors, 50 Pa. 150; Firemen's R. Assn. v. Scranton, 217 Pa. 585; Com. v. Walton, 182 Pa. 373; Home for Colored C. v. Co., 72 Pa. Superior Ct. 106; Com. v. School Dist., 241 Pa. 224; Com. v. Pittsburgh, 183 Pa. 202; Historical Pagent Assn. v. Phila., 260 Pa. 447; Sambor v. Hadley, 291 Pa. 395; Sharpless v. Phila., 21 Pa. 147; Taylor v. Phila., 26 Pa. Dist. R. 979; Imperial F. Ins. Co. v. Co., 151 U. S. 452.

The school district by reason of insuring its property in a mutual fire insurance company does not appropriate money for any corporation, association, etc.

The school district by reason of insuring its property in a mutual fire insurance company does not become a stockholder therein: Keller v. Scranton, 200 Pa. 130.

*Ira Jewell Williams,* with him *Frederick H. Nash* and *Francis Shunk Brown,* for appellant, Arkwright Mutual Fire Insurance Co.—A school district, by insuring in a mutual company, does not become a stockholder: Brode v. Phila., 230 Pa. 434; Given v. Rettew, 162 Pa. 638.

There was no loan of credit by the school district: Brooke v. Phila., 162 Pa. 123; City Club v. Pub. Ser. Com., 92 Pa. Superior Ct. 219; Sambor v. Hadley, 291 Pa. 305; Kennedy v. Meyer, 259 Pa. 306.

This court has consistently declined to apply the constitutional provision to cases to which it was not intended to extend: Brooke v. Phila., 162 Pa. 123; Brode v. Phila., 230 Pa. 434; City Club v. Pub. Ser. Com., 92 Pa. Superior Ct. 219; Com. v. Pittsburgh, 183 Pa. 202; Com. v. School Dist., 241 Pa. 224; Ruler v. Co., 290 Pa. 427.

*Charles P. Hewes*, for appellees.—We contend that the proposed contract on the part of the school district violates section 7, article IX, and section 7, article XVI, of the Constitution of the Commonwealth and is therefore ultra vires and null and void. It is not a constitutional purpose: Ford v. Kendall Boro. S. Dist., 121 Pa. 543; Com. v. Moir, 199 Pa. 534; P. R. R. v. Phila., 47 Pa. 189; Wheeler v. Phila., 77 Pa. 338; Wilkes-Barre City Hospital v. Co., 84 Pa. 55; Earley's App., 103 Pa. 273; Com. v. Walton, 182 Pa. 373; Brode v. Phila., 230 Pa. 434.

OPINION BY MR. JUSTICE SADLER, May 27, 1929:

The directors of the School District of the City of Erie determined to insure certain of the buildings under their control, dividing the same into groups, and, by resolution, asked proposals for furnishing the necessary coverage. Two companies offered to supply policies on both classes, and the Arkwright Company of Massachusetts, intervening defendant, limited its proposal to the six properties, valued at $3,100,000, in the second classification. The tenders of all, except the last mentioned, were faulty in form. The latter was a mutual company, and offered to insure in consideration of a premium deposit based on the rate of ninety cents per $100, in all $27,900, with an anticipated return of 85%, making the probable actual cost for three years $4,185. Under the terms of its proposed contract there was a further contingent liability by plaintiff limited to five times the initial payment.

Taxpayers filed a bill against the school district to restrain the acceptance of the bids of any of the companies named, but, by answer filed, it appeared all had been rejected except the one of the Arkwright Company for the properties in group 2, which was not formally approved, but it is agreed will be if legally permissible. This tender was held by the court invalid as not offering a kind of insurance of which advantage could be legally taken by a school district, and a permanent injunction was issued restraining the acceptance of its offer. Thereafter, on petition, the decree entered was revoked, and the Arkwright Company permitted to intervene as a party defendant and file an answer. Testimony was taken, findings of fact and conclusions of law made, and a final decree then entered by the court in banc, to the same effect as that originally filed by the chancellor. The School District of Erie and Arkwright Mutual Fire Insurance Company have filed separate appeals.

The legal question passed upon in both proceedings is the right of a school district to insure its property against loss by fire in a mutual company. Though the wisdom of so doing may be questioned, where the values represented are as large as here involved, yet with this exercise of municipal discretion we are not here concerned (Admiral Realty Co. v. New York, 206 N. Y. 110, 99 N. E. 241), but only with the power to purchase insurance of the character proposed. Neither the regularity of the bid made, nor the stability or solvency of the Arkwright Company, appellant, is in dispute.

Though not the subject of legislation prior to 1911, the right to insure school buildings by the proper authorities was recognized. In that year the School Code (May 18, 1911, P. L. 309, section 634) expressly authorized directors to enter into such contracts as deemed proper "with any person, firm or corporation for the purpose of insuring against loss or damage by fire, or otherwise." This was followed by the Act of April 27, 1925, (P. L. 305), which permits policies to be taken out

"with any mutual fire insurance company duly author-
ized by law to transact business in the Commonwealth
of Pennsylvania." The Arkwright Company, a Massa-
chusetts corporation, with power to write insurance in
this State, was originally chartered to furnish protec-
tion against damage from fire to manufactories and
their contents, though, by amendment, its powers were
later extended to permit the coverage of other losses.
It was not a stock company conducting business for
profit, but a mutual concern, in which initial premium
deposits were made by those becoming members. Sums
collected, if not used to meet losses, were returned to the
holders. If the liabilities accruing were in excess of the
first deposits received, additional payments were re-
quired, but in no case could the insured be called upon
for a sum greater than five times the original sum ad-
vanced.

In effect, the consideration given by the insured is the
cash deposit,—a portion of which, experience indicated,
will be returned, except in case of overwhelming and un-
usual losses,—and the promise to pay an additional
amount in case of necessity, not exceeding a fixed limit.
The money advanced and the covenant to pay more, if
occasion required, constitutes the real premium. That
this is the proper construction is shown by our Insur-
ance Code (May 17, 1921, P. L. 682) which provides in
section 806 (page 768) : "The 'maximum premium' pay-
able by any member of a mutual company, other than
a mutual life company, shall be expressed in the policy,
or in the application for the insurance if attached to the
policy. Such maximum premium shall be a cash pre-
mium and an additional contingent premium not less
than the cash premium, or may be solely a cash pre-
mium."

The bid offered by the Arkwright Company to the
school district referred to the policy submitted, and its
terms became part thereof. The stipulations therein
are to be considered in determining the contract rela-

tionship proposed to be entered into. From it we determine the responsibilities assumed by the respective parties as to the premium to be paid presently and the possible extent of further liability: Weisenberger v. Harmony Fire Ins. Co., 56 Pa. 442; London Ins. Co. v. Lycoming Ins. Co., 105 Pa. 424; Smart v. Phila., 205 Pa. 329. The responsibility for an additional limited assessment is part of the consideration, and it so appears in the contract. There is no loaning of credit by the school district to the insurance company, but rather by the latter to the former, since it does not require the immediate payment of the amount of contingent liability, but refrains from asking presently more than one-fifth thereof, having under no circumstances the right to demand more than the maximum. " 'Assessments' and 'premiums' are interchangeable words and mean the same thing. They are the consideration for the contracts": Hill v. Farmers Mut. Fire Ins. Co., 129 Mich. 141, 88 N. W. 392.

The court below was of opinion that though the right to insure in a mutual company was expressly given by the Act of 1925, yet this statute was in conflict with the Constitution, which provides (article IX, section 7) "The General Assembly shall not authorize any county, city, borough, township or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual." It must be kept in mind, in passing upon the question raised, that all presumptions are to be drawn in favor of the validity of the legislation (Kennedy v. Meyer, 259 Pa. 306; Speer v. School Directors, 50 Pa. 150), and that a statute is not to be declared unconstitutional unless this conclusion is so plainly apparent as to leave no doubt: Keator v. Lackawanna Co., 292 Pa. 269.

To remedy the evils incident to subscriptions by municipalities to stock of railroads and like enterprises,

the constitutional prohibition against purchases of securities, and pledges of credit, was introduced first into the Constitution of 1857, and repeated in that of 1874. The history of this limitation, as well as the purpose intended to be effected thereby, has been the subject of frequent discussion in our cases, and need not be again elaborated on: Com. v. Walton, 182 Pa. 373; Wheeler v. Phila., 77 Pa. 338; Speer v. School Directors, supra. The thought was not to prevent the municipal corporation from entering into engagements to carry out a proper governmental purpose, though the incurring of indebtedness results: Sambor v. Hadley, 291 Pa. 395; Com. v. Barker, 211 Pa. 610. So it may invest in property which it leases to another (Wheeler v. Phila., supra), or make advances for the cost of improvements: Brooke v. Phila., 162 Pa. 123; City Club of Phila. v. Pub. Ser. Com., 92 Pa. Superior Ct. 219. In the present case, the school district became a member of a mutual company, but, by its contract, it did not become generally an insurer (Given v. Rettew, 162 Pa. 638), its liability being limited, a factor which distinguishes School District v. Twin Falls Co., 30 Idaho 400, 164 Pac. 1174, an authority relied on by appellee here. Nor is it material that, because of its ownership of a policy, it may have a voice in the management of the company: Brode v. Phila., 230 Pa. 434.

The exact situation now presented has not been heretofore considered by this court. Dillon (Municipal Corporations, 5th ed., section 976) thus states the proposition generally: "As an incident to the power to erect and maintain a city hall, schoolhouses, and other public buildings, the municipality has the right to contract for indemnity for loss by fire by insuring these buildings; and, having the power to insure, it may insure them in a corporation organized on the mutual plan under the laws of the state in which the city is located. Giving premium notes for losses incurred by such company on other insurance is neither a loan of the credit of the city,

nor the owning of stock or bonds of the company, in violation of constitutional provisions."

This conclusion was reached in New Jersey, where a limitation on municipal power similar to the one here in force is found: French v. City of Millville, 66 N. J. L. 392, 49 Atl. 465, 67 N. J. L. 349, affd. 51 Atl. 1109. It was there said, in part: "The scheme of mutual insurance in such associations does not fasten upon the members any liability which municipal corporations may not, with reasonable safety, assume, for the limit of obligation is always fixed at the time the insurance is obtained, and is rarely enforced beyond what would be charged for insurance on the nonmutual plan. By giving its premium notes, the city did not loan its credit to the company. Its promises were made for a consideration, of value beneficial to itself, and, like other assets of the company, they were purchased, not borrowed; nor did the so-called 'membership' of the insured render the city in any sense the owner of the stock or bonds which belonged to the company, or a holder of stock in the company, within the fair import of the constitutional prohibition. [The] right to share in a limited part of the profits of business is essentially different from [the ownership of] corporate stock, which represents a proportionate part of all the property of the corporation." What was said in this leading case has met with approval in Johnson v. School Dist. (Oregon), 270 Pac. 764, affd. 273 Pac. 386, though, in the later decision, the premium was payable in cash without liability to further assessment. The right to insure in mutual companies was sustained in Kentucky (Dalzell v. Bourbon County Board, 193 Ky. 171, 235, S. W. 360), and in terms provided for by constitutional amendment in Ohio. Inferentially, this is the conclusion reached in California: People v. Stanley, 225 Pac. 1. A contrary view has been expressed in Texas: Tyler v. Texas Employer's Ins. Assn., 288 S. W. 409.

Our constitutional provision was designed to prevent municipal corporations from joining as stockholders in hazardous business ventures, loaning its credit for such purposes, or granting gratuities to persons or associations where not in pursuit of some governmental purpose. Taking of insurance in a mutual company with limited liability is not within the inhibition, for the district does not become strictly a stockholder, nor is it loaning its credit. It agrees to pay a fixed sum, and can be called upon for the total only in case of some unusual catastrophe causing great loss. Until this contingency arises it is required to advance but a small portion of the maximum, and is, in effect, loaned credit as to a possible future demand by the company for the balance which may become payable. By the terms of the policy the district did not assume responsibility for losses of others insured, except as to a named and limited amount. The Act of 1925 is presumably valid, and does not so plainly violate section 7 of article IX of the Constitution as to justify us in holding the statute to be beyond the scope of legislative power.

The decree of the court below is based upon a contrary conclusion, and cannot be sustained on the ground asserted, but another contention was made by the plaintiffs which requires further consideration. It was insisted that the defendant was without corporate power to issue policies as proposed. As to this the chancellor said: "It may be questioned also whether under its charter this insurance company has authority to insure school buildings. But whether or not such contracts are ultra vires need not be decided here." There is no definite conclusion of the trial court as to this feature of the complaint. Though the decrees entered must be reversed, yet, since we are of opinion that the view expressed by the court below that the Act of 1925 is unconstitutional legislation, and the decrees are based on this conclusion, the proceeding will be returned for consideration of the question not as yet determined.

In view of the character of this proceeding, and the necessity for haste in the determination of the question involved, so that the property of the school district may have in force proper indemnity against fire loss, the present appeal has been promptly disposed of. Doubtless, upon the return of the record, the second question raised can be brought to the attention of the court without undue delay, and a final decree then be entered.

The decrees in both appeals are reversed with a procedendo, costs to abide the result of the suit.