THOMAS E. FRENCH, RECEIVER OF THE MILLVILLE MUTUAL MARINE AND FIRE INSURANCE COMPANY v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF MILLVILLE.

Submitted March 25, 1901—Decided June 10, 1901.

1. The charter of the Millville Mutual Marine and Fire Insurance Company authorizes it to insure corporations as well as individuals.

2. The charter of the city of Millville authorizes it to insure its public buildings against loss by fire, on the plan of mutual insurance, in such companies as the Millville Mutual Marine and Fire Insurance Company.

3. By giving its premium notes for the payment of assessments to meet losses incurred by such an insurance company, the city does not loan its credit to the company, in violation of article I., paragraph 19 of the constitution of New Jersey.

4. By becoming a member of such an insurance company, the city does not become the owner of any stock or bonds belonging to the company or of any stock in the company, in violation of article I., paragraph 19 of the state constitution.

5. When a demurrant has been required to specify the causes of his demurrer, he cannot, on the argument, object to defects which he has not particularized.

On contract. On demurrer to declaration.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the plaintiff, *Samuel H. Richards* and *Thomas E. French.*

For the defendant, *Louis H. Miller.*

The opinion of the court was delivered by

DIXON, J. The declaration in this case consists of three counts, the first and second being special and the third common. The defendant has filed a single demurrer to the first and second, the validity of which is the question now before us. If either count is sufficient against the causes specified by the defendant, the demurrer fails.

The second count sets forth the incorporation of the Millville Mutual Marine and Fire Insurance Company, by an act of our legislature, approved March 8th, 1859, and found in *Pamph. L., p.* 144; the provisions of its charter, that persons insuring with the corporation should thereby become members thereof during the period they remained insured, and before receiving a policy should deposit their promissory note for such sum of money as should be determined upon by the directors, such note to be paid at such time and in such manner as the by-laws might determine; the provisions of the by-laws, that assessments might be made on such notes for losses and money borrowed for the purpose of cashing losses, which assessments should include incidental expenses, expenses of collecting assessment and uncollectible claims, and that notice of such assessment should be given by publication, &c. (stating the mode); that, on a bill filed in Chancery for that purpose, the said company was proved to be insolvent, and Thomas Whitaker was appointed receiver thereof on September 28th, 1885; that, before such appointment, the defendant was the holder of eight policies of fire insurance in the company, and had given to the company therefor eight

premium notes, for sums stated, payable to said company in
such proportions and at such times as might, agreeably to .
the charter, be required; that, in accordance with the pro-
visions of the charter and by-laws, the said receiver made an
assessment upon each of said premium notes, for sums stated,
which assessment was entirely for fire losses that occurred
during the life of said policies and certain necessary expenses,
and was only for their respective proportionate shares thereof;
that, in accordance with the by-laws, the said receiver caused
notice of the said assessment to be published, &c. (stating
the mode, as required by the by-laws); that on July 13th,
1899, the present plaintiff was, by the Chancellor, appointed
receiver, in stead of said Thomas Whitaker; and that the
time for payment of said assessment is passed.

Under the decision in *Meley* v. *Whitaker, Receiver,* 32
*Vroom* 602, these facts are, in substance, sufficient against
every objection specified in the causes of demurrer respecting
this count, except the first and last.

The first objection is that the making of these promissory
notes was *ultra vires,* the city having no authority to make
the same, or to become a member of a private corporation, and
under this the defendant urges (1) that the charter of the
insurance company permits only natural persons to become
members of it; (2) that municipalities are not authorized,
without express sanction, to issue commercial paper; (3) that
they may not incur obligations maturing beyond the current
taxing year, and (4) that paragraph 19 of article I. of the
constitution, which prohibits cities, &c., from loaning their
credit to any corporation, and from becoming, directly or
indirectly, the owners of any stock of any corporation, would
be violated by upholding these notes of the defendant city
and its membership in the insurance company.

Literally interpreted, every clause in the company's charter
might be said to indicate that only natural persons of the
male sex could become members, but such cannot have been
the legislative intention, and there appears no reason for
denying to this charter the rule of construction embodied in
section 9 of the act relative to statutes (*Gen. Stat , p.* 3194),

that words importing the singular number or masculine gender should be understood to include several persons, and females, and bodies corporate, unless there be something repugnant to such construction.

The premium notes now in suit do not possess that quality of commercial paper which has given rise to the expression of judicial doubt respecting the implied power of municipal corporations to issue it. They are mere evidences of indebtedness, not negotiable so as to give the transferee any right greater than that of the original holder.

We have no law which restricts municipal obligations to those maturing during the current taxing year, nor is there anything in this case showing that the obligations expressed by these notes did not mature during the taxing year' in which they were issued, for the maturity of the obligation is quite different from the arithmetical calculation by which its amount is ascertained.

The defendant's objection respecting the general power of the municipality and the constitutional prohibition, may also, we think, be satisfactorily answered.

The city charter (*Pamph. L.* 1866, *p.* 116) empowers the city to erect and maintain a city hall, school-houses and such other public buildings as may be necessary in the city. As incidental to the power thus granted, the city acquired the right to contract for indemnity against loss by the burning of such building; and it almost inevitably follows that this right could be exercised by insuring upon the mutual plan, for the fire insurance companies created by our legislature prior to 1866 were generally organized on that basis. Insurance by the city in this particular company has also in its' favor a presumption arising out of the fact that the legislature had located the company in the city limits. The scheme of mutual insurance in such associations does not fasten upon the members any liability which municipal corporations may not, with reasonable safety, assume, for the limit of obligation is always fixed at the time the insurance is obtained, and is rarely enforced beyond what would be charged for insurance on the non-mutual plan.

By giving its premium notes the city did not loan its credit to the company. Its promises were made for a consideration of value beneficial to itself, and like other assets of the company, they were purchased, not borrowed. Nor did the so-called membership of the insured render the city in any sense the owner of the stock or bonds which belonged to the company, or a holder of stock in the company, within the fair import of the constitutional prohibition. The right, beyond mere insurance, which insured parties acquired by virtue of their membership in this company, is declared, by section 11 of the charter, to be a right to a "proportion of the profits, if any, of each year's business in proportion to the amount of premium paid." This right to share in a limited part of the profits of business is essentially different from corporate stock, which represents a proportionate part of all the property of the corporation. The difference is similar to that which exists between the interest of the members of a copartnership and that of its employes whose compensation is measured by its profits.

We therefore conclude that the legislature intended to confer upon this municipality power to enter into such contracts as these notes express, and that there is no reason to thwart that intention.

The last objection specified in the causes of demurrer is that the method of determining the amount of the assessment is not set forth with sufficient certainty, and is so vague as to be meaningless.

The count alleges that the by-laws required premium notes given for policies to be assessed for losses and expenses. This implies that the losses and expenses sustained during the life of the policies should be distributed proportionately upon the notes given for those policies. The count distinctly avers that the assessment was so levied. This certainly is not meaningless, but intelligibly points out the *method* of making the assessment. True, the pleader has not stated the several sums necessary to be considered in testing the accuracy of the assessment, although he seems to have made an attempt to do so, but, if such detail be required by the rules of correct pleading,

the defendant's objection fails to particularize the defect, being addressed to the *method* only.

We think the plaintiff is entitled to judgment on the second count, and if he will discontinue his suit upon the other counts, permission will not be given to the defendant to withdraw its demurrer and plead, and the plaintiff may have his damages assessed and final judgment entered.