FIRST NATIONAL BANK OF CARTERSVILLE *v.* STATE MUTUAL LIFE INSURANCE COMPANY *et al.*

Under the charter and by-laws of a mutual life insurance corporation duly chartered on the legal-reserve basis, without capital stock, and a policy of life insurance issued by it, now under consideration, the policyholder did not acquire a vested unconditional legal interest in the corporation or its business or an unconditional equitable interest in the assets of the company, though he did acquire a legal interest in the business and an equitable interest in the assets, both interests being determinable upon failure to pay the stipulated premiums upon his policy. The policyholder, being also a public officer authorized to attest mortgages and deeds to secure debt, was not, on account of pecuniary interest and his relation to the company, disqualified to attest a deed purporting to convey land as security for a loan in which the insurance company was the grantee.

No. 5256.  FEBRUARY 17, 1927.  REHEARING DENIED, FEBRUARY 26, 1927.

Equitable petition.  Before Judge Irwin.  Floyd superior court. December 4, 1925.

The State Mutual Life Insurance Company was chartered as a mutual insurance corporation on the legal-reserve basis, without capital stock. The charter provided that "All policyholders shall be members of this association, but the control and regulation of the business and of said fund and the distribution of dividends shall be vested in your petitioners and their successors during the life of the company; but should the company at any time cease to do business or be dissolved for any reason, then the fund which had been accumulated in the mortuary and reserve departments for the payment of losses shall be divided out proportionately amongst those who at the time may be holders of policies in this association." In 1915 the company was placed under the control of the insurance commissioner of the State, and thereafter its business was conducted by the commissioner. At the time the commissioner took charge, W. C. Henson was the holder of a $5000 insurance policy issued upon his life by said company in 1908, which was payable upon proofs of death to the wife of the insured, or to a substituted beneficiary as provided in the policy. The policy by its terms was incontestable after it had been in force one year. It contained a provision: "Provided all premiums have been duly paid, a dividend will be declared at the end of the first policy year, and at the end of each year thereafter, during the continuance of this policy. Dividends may be received by the insured in accordance with any one of the following:" Then follow a number of options as to the form in which the insured might receive his dividends. Attached to the policy were certain guaranteed dividend coupons for $33.80 each, one of which was redeemable annually, and which the company should accept in part payment of annual premiums. On July 28, 1920, H. S. McGowan executed to the State Mutual Life Insurance Co. a deed purporting to convey described land as security for a loan, and containing a power of sale. The deed was attested by W. C. Henson, notary public, and one other subscribing witness, and was recorded in the county where the land was located, July 30, 1920. At the time he attested the deed W. C. Henson still held the aforementioned life insurance policy, and he continued to hold it until 1922. On June 12, 1922, the First National Bank of Cartersville obtained a general common-law money judgment against McGowan, and execution was duly issued and entered upon the execution docket. On August

29, 1925, the First National Bank. of Cartersville instituted an equitable action against the State Mutual Life Insurance Company and the insurance commissioner of Georgia, seeking to enjoin exercise of the power of sale contained in the security deed, and to establish superiority of plaintiff's judgment over the security deed, and to subject the land to payment of the plaintiff's debt. The alleged grounds of relief were, that "W. C. Henson was not qualified to attest said security deed as the notary public or official attesting witness thereon, because of the facts hereinbefore alleged; and by reason of the interest of the said W. C. Henson in said insurance company, and in the transaction between the said McGowan and said insurance company, and the interest of the said Henson in the profits arising from said transaction, said deed was not properly attested so as to admit it legally to record." The defendants filed a demurrer and·an answer. At an interlocutory hearing the judge refused a temporary injunction, and the plaintiff excepted.

*Neel & Neel* and *Paul F. Akin,* for plaintiff.

*Maddox, Matthews & Owens,* for defendants.

ATKINSON, J. In this case the rivalry is between a security deed executed under the provisions of the Civil Code (1910), § 3306 et seq., by McGowan, purporting to convey described land located in Bartow County to the State Mutual Life Insurance Company as security for a loan made by that company to McGowan, actually recorded in the clerk's office of the superior court of Bartow County, and a lien of a subsequent common-law judgment obtained by the First National Bank of Cartersville against McGowan, obtained in the city court of Cartersville, upon which execution was duly issued and entered upon the general execution docket of the county. The First National Bank of Cartersville insists that its lien is superior to the rights of the insurance company as holder of the security deed, because the security deed, although senior to the judgment, was recorded on insufficient proof for record, in that the official witness attesting the signature of the grantor was a policyholder in the grantee corporation which was a mutual life insurance company without capital stock, doing business upon a legal-reserve basis, and the said official witness, being a member of the insurance company in virtue of holding the policy of insurance, was so pecuniarily interested in the transaction and in the business and prop-

erty of the insurance company as disqualified him from attesting the security deed, and therefore that the record of the security deed on such attestation was void, and the land described in the security deed was subject to the plaintiff's junior judgment. The effect of the security deed was to convey the legal title of the property to the grantee, thus leaving no leviable interest in the land in the grantor. Civil Code (1910), § 3306. It was provided, however, by the act approved September 30, 1885 (Acts 1884-5, p. 124) : "All deeds to realty . . given as security for debt shall be recorded within thirty days from their date. Every such deed shall be recorded in the county where the land conveyed lies. . . Such deeds . . not recorded within the time required remain valid against the persons executing them, but are postponed to all liens created or obtained, or purchases made, prior to the actual record of the deed. The foregoing provisions of the act are now substantially embodied in the Civil Code (1910), § 3307. By the same act it was provided: "In order to admit such deeds . . to record, they shall be attested or proved in the manner now prescribed by law for mortgages." Civil Code (1910), § 3308. This law was amended by the act approved August 17, 1918 (Acts 1918, p. 209), in a manner not material to be here stated.

It is provided that in order to admit a mortgage to record, "it must be executed in the presence of, and attested by, or proved before, a notary public or justice of any court in this State, or a clerk of the superior court (and in case of real property by one other witness.)" Civil Code (1910), § 3257. It is also provided: "Mortgages not recorded within the time required remain valid as against the mortgagor, but are postponed to all other liens created or obtained, or purchases made, prior to the actual record of the mortgage. If, however, the younger lien is created by contract, and the party receiving it has notice of the prior unrecorded mortgage, or the purchaser has the like notice, then the lien of the older mortgage shall be held good against them." § 3260. It is also provided: "A mortgage recorded in an improper office, or without due attestation or probate, or so defectively recorded as not to give notice to a prudent inquirer, shall not be held notice to subsequent bona fide purchasers or younger liens. A mere formal mistake in the record shall not vitiate it." § 3262. Construing all of the foregoing statutes together and especially construing

46

§ 3262 with § 3307, a defective record of a security deed will be equivalent to no record, and, in the language of the § 3307, it will "remain valid against the persons executing" it, but will be "postponed to all liens created or obtained, or purchases made, prior to" a legal record of the security deed. The statute is not the same as the provisions of the registry act of 1889 (Acts 1889, p. 106); and the case differs from *Donovan* v. *Simmons,* 96 *Ga.* 340 (22 S. E. 966), holding that the act of 1889 did not create a new competition between deeds of bargain and sale and the liens of judgments. So this leads to the question as to whether the notary, in the circumstances of this case as set out in the statement of facts, was disqualified on account of interest to attest the security deed as the official witness relied on to authorize admission of the deed to record.

In *Southern Iron & Equipment Co.* v. *Voyles,* 138 *Ga.* 258 (75 S. E. 248, 41 L. R. A. (N. S.) 375, Ann. Cas. 1913D, 369), it was held: "A notary public is disqualified from attesting a deed or bill of sale, so as to entitle it to record, if he is pecuniarily or beneficially interested in the transaction." Having announced this principle in the first division, the principle was thus applied in the second division: "A stockholder of a corporation bears such financial relation to it that he is disqualified, on account of interest, from attesting as a notary a deed or bill of sale to which the corporation is a party." The foregoing application of the rule was adverted to approvingly, but not extended, in *Peagler* v. *Davis,* 143 *Ga.* 11 (3) (84 S. E. 59, Ann. Cas. 1917A, 232), holding that a stockholder in a banking corporation was qualified to attest as a non-official witness a mortgage to the corporation. It was said, in the opinion: "It appeared from the evidence that the non-official witness was a stockholder of the mortgagee corporation; and it is insisted that he is incompetent on that account to be an attesting witness. This court held, in *Southern Iron & Equipment Co.* v. *Voyles* [supra], that a stockholder of a corporation bears such financial relation to it that he is disqualified from attesting, as a notary, a mortgage to which the corporation is a party. The rule was said to be founded on a sound public policy, which forbade an official from taking an acknowledgment of an instrument in which he had a beneficial interest, though he may not in strict law be a party to it. The statute permits recordation of a mortgage only

on the attestation or acknowledgment of certain officials, or upon the affidavit of a non-official witness. All officials authorized by law to attest a mortgage so as to entitle it to registration act under their oath of office, and a wise public policy requires that such officials should be disinterested and entirely impartial as between the parties. Impartiality of conduct is best secured by denying an interested official the power to act where he is, or may be, pecuniarily benefited by the transaction. It does not follow, however, that a stockholder, though incompetent to take an acknowledgment of the corporation's deed, is likewise incompetent as an attesting witness." See also *Exchange National Bank of Fitzgerald* v. *Pearsons-Taft Co.,* 159 *Ga.* 168 (125 S. E. 377).

In *Harvard* v. *Davis,* 145 *Ga.* 580 (89 S. E. 740), this court refused to extend the foregoing rule so far as to render disqualified, as an official witness to a security deed, a notary public who was also an attorney at law and member of a firm who would receive a fee for negotiating a loan. In the opinion it was said: "It appeared that the firm of which the attorney was a member received, as compensation for negotiating the loan, $300, of which the attorney received one half. It was contended that this gave the attorney such a pecuniary interest as, under the ruling in *Southern Iron & Equipment Co.* v. *Voyles* [supra], would disqualify him from acting as the official attesting witness to the security deed, and that the record of the deed based on such attestation was void. In the case cited the question was whether a stockholder in a corporation, who was also an officer authorized to attest deeds, was disqualified, by reason of his relation to the corporation, to officially attest a bill of sale executed by another person to the corporation. On the basis that a person could not attest a deed to himself, and that whatever would affect the property and business of the corporation would also affect the stockholder, it was held, independently of statute, and as a matter of public policy, that the stockholder was so interested as to disqualify him from acting as an official attesting witness. But the facts of that case were different from those now under consideration. In the instant case the attorney was not interested either as grantee or as grantor in the deed. The witness did not have an interest in the property, but was merely to participate in fees to be paid his firm as compensation for services in negotiating the loan; and the case falls

within the principle of *Austin* v. *Southern Home B. & L. Asso.,* 112 *Ga.* 439 (6), 448 (50 S. E. 382) ; *Jones* v. *Howard,* 99 *Ga.* 451 (4), 457 (27 S. E. 765, 59 Am. St. R. 231) ; *Sloss* v. *Southern Mutual B. & L. Asso.,* 97 *Ga.* 401 (23 S. E. 849). In the *Austin* case it was held : 'One who is an agent and attorney at law of a lender of money, who represents such lender in negotiations for a particular loan, and who is also a notary public, may in the latter capacity lawfully attest a security deed given to secure the loan negotiated by him.' " In *Citizens Trust Co.* v. *Butler,* 152 *Ga.* 80 (108 S. E. 468), it was held that : "In this State a secretary of a banking corporation who is not a stockholder therein, or otherwise beneficially or pecuniarily interested in the transaction, is not disqualified from attesting, as an official witness, a deed of conveyance in which the corporation is the grantee; there being no express statute forbidding such officer to act." In *Farmers Warehouse Co.* v. *First National Bank,* 152 *Ga.* 262 (109 S. E. 900), it was held that a person who was secretary and treasurer and general manager of a corporation and also a notary public was not incompetent to attest as an official witness a bill of sale to the corporation.

.So it is not every possible pecuniary gain or relation that would disqualify an officer to attest a paper as an official witness. The ruling in *Southern Iron & Equipment Co.* v. *Voyles,* supra, had reference to a stockholder in an ordinary commercial or industrial corporation in which the interest of the stockholder, whether the legal interest in the enterprise or the equitable interest in its assets, was absolute, and unconditionally vested. That differs from the interest of the policyholder in the State Mutual Life Insurance Company as involved in this case, where the membership of the policyholder and the validity of the contractual obligations to the insured are conditioned upon the continued payment of annual premiums. Among the contractual obligations are certain "guaranteed dividend coupons" redeemable annually, which are less than the annual premiums; but these are upon condition that the annual premiums be paid. So also are the contractual obligations whereby a policyholder may participate in any fund which has been accumulated in the mortuary and reserve departments for payment of losses, should the corporation at any time cease to do business or be dissolved; but these are conditional upon the policy being in force at the time of the corporation's ceasing to do business or

being dissolved. The statutes of this State do not declare that a holder of a policy of insurance in a company of this character, who is also a public officer, shall be disqualified to officially attest a deed to which the insurance company is a party, nor is there any sound public policy which requires such disqualification. There are usually so many persons who are policyholders in an insurance company, qualified to be public officers, and so many officers and agents in different departments of the business of the company, and results would be so far reaching, that it would be a dangerous policy to disqualify all holders of insurance contracts with the company, who might also be public officers, from officially attesting a contract to which the company was a party. It happens in the instant case that certain of the officers of the insurance company saw and examined the loan deed after it was officially attested by the policyholder and before the transaction was concluded, from which fact it might be inferred that the company had notice that the instrument was attested by an officer holding a policy in the company; but that would not affect the question of public policy. The rule announced and applied in *Southern Iron & Equipment Co.* v. *Voyles,* supra, should not be extended to this case.        *Judgment affirmed.    All the Justices concur.*