JAMES W. FULLER, ON BEHALF OF HIMSELF AND ALL OTHER TAXPAYERS OF THE COUNTY OF WAKE WHO DESIRE TO MAKE THEMSELVES PARTIES HERETO, v. JOHN C. LOCKHART, SUPERINTENDENT OF PUBLIC INSTRUCTION FOR THE COUNTY OF WAKE; DR. N. Y. GULLEY, CHAIRMAN OF THE BOARD OF EDUCATION OF THE COUNTY OF WAKE; DR. W. C. RIDDICK, M. B. CHAMBLEE, ALFRED BAUCOM, AND J. P. HUNTER, MEMBERS OF THE BOARD OF EDUCATION OF THE COUNTY OF WAKE; AND HARDWARE MUTUAL FIRE INSURANCE COMPANY OF MINNESOTA, A CORPORATION; HARDWARE DEALERS MUTUAL FIRE INSURANCE COMPANY OF STEVENS POINT, WIS., A CORPORATION; MINNESOTA IMPLEMENT MUTUAL FIRE INSURANCE COMPANY OF OWATONNA, MINNESOTA, A CORPORATION; AND FEDERAL HARDWARE AND IMPLEMENT MUTUALS, AND ALL OTHER OFFICERS AND AGENTS AND EMPLOYEES OF SAID COMPANIES.

(Filed 11 December, 1935.)

1. **Counties C a—County may insure school property in mutual companies.**

   A county board of education has the authority to insure school property in a mutual fire insurance company authorized to do business in this State, and assume the contingent liability limited to the amount of the cash premium, and the execution of such policy does not lend the credit of the State to a private corporation, Art. V, sec. 4, nor create a debt for

other than a necessary expense, Art. VII, sec. 7, nor constitute the county the owner of stock in a private corporation, nor a partner in a private business.

**2. Insurance B b—**

The policyholders in a mutual fire insurance company are not stockholders therein, and are in no way liable for the debts of the company beyond the contingent liability fixed in the policy. N. C. Code, 6348, 6351, as amended by ch. 89, Public Laws of 1935.

**3. Schools and School Districts D a—**

A county board of education is an administrative agency of the State in the maintenance and operation of the State public school system.

**4. Schools and School Districts D b—**

By the School Machinery Act of 1935, salaries, plant operation, and other major items of current school expenses were transferred from the county boards of education to the State, but maintenance expense and fixed charges, including insurance, were left with the county boards of education. Ch. 455, sec. 9, Public Laws of 1935.

**5. Taxation A a—**

Premiums for insurance of its public school buildings is a necessary public expense of a county, and the incurring of liability therefor need not be submitted to the voters. N. C. Code, 5596 (a) ; Art. VII, sec. 7.

**6. Schools and School Districts D b—**

The selection of a company to carry insurance on the public school buildings is a matter in the discretion of the county board of education, and its action in regard thereto is not ordinarily reviewable.

**7. Schools and School Districts C e—**

Where a county board of education desires to purchase insurance in a mutual company, it may set up in its budget the cash premium and the contingent liability, not exceeding the cash premium.

**8. Schools and School Districts D b—**

N. C. Code, 6348, 6351, as amended by ch. 89, Public Laws of 1935, do not indicate legislative intent to prohibit county boards of education insuring property in mutual companies by failing to expressly grant such authority, sec. 6348 being an enabling statute relating solely to trustees, and sec. 6351 prescribing the method and allowing the operation of mutual companies in this State.

**9. Insurance E b—**

Laws in force at the time of executing a policy of insurance are binding on the insurer and become a part of the insurance contract. N. C. Code, 6287.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Parker, J.,* at September Term, 1935, of WAKE. Affirmed.

This was a civil action, instituted on behalf of the plaintiff and all other taxpayers of Wake County who desire to make themselves parties

against the County Board of Education of Wake County and the three mutual fire insurance companies above set forth, named as defendants.

The plaintiff in his complaint, among other things, alleges that the County Board of Education of the County of Wake, by unanimous vote, adopted a resolution authorizing the superintendent of public instruction of said county to insure against loss by fire certain school buildings located in Wake County, under the jurisdiction of said board, and in pursuance of said resolution that the superintendent of public instruction applied for a fire insurance policy insuring the Green Hope High School against loss by fire to be issued by defendant fire insurance companies. That the said three insurance companies delivered a single policy to the County Board of Education of Wake County, as is set forth in the record, in the amount of $2,000, limiting the liability of each to one-third of any loss sustained not exceeding the amount of the policy, for a period of one year, reciting a consideration of $12.35 premium and a contingent liability against said County Board of Education to an assessment in an equal additional amount.

The plaintiff further alleged that, unless restrained, the County Board of Education would accept said policy of insurance and pay the cash premium and assume said contingent liability for assessment for equal and additional amounts, to the great and irreparable damage and injury of plaintiff and other taxpayers in said county.

The plaintiff further alleges: "The acceptance of said fire insurance policy and payment of said cash premium will and does constitute said defendant County Board of Education of the County of Wake a member of each of said defendant mutual insurance companies; and in accepting said insurance and becoming members of said defendant insurance companies, said County Board of Education of the County of Wake does and will: (1) Assume an unlimited liability to assessment to pay losses and expenses of the companies, notwithstanding any limitation of this liability recited in the policy, and assumption of such liability by the County Board of Education of the County of Wake would be wholly *ultra vires* and contrary to law; (2) undertake to pay for the insurance coverage obtained an indeterminate price, which would be left to the arbitrary determination of the companies, contrary to the laws of the State relating to school districts and other public corporations; (3) assume or underwrite the obligations of private individuals and corporations, contrary to the Constitution and laws of the State; (4) undertake to raise money by taxation for private purposes, contrary to the Constitution and laws of the State; (5) lend its credit to a private corporation, contrary to the Constitution of the State; (6) become a stockholder in a private corporation, contrary to the Constitution of the State; (7) engage in the business of fire insurance, and in so doing would

be acting *ultra vires* and contrary to the law of the State relating to public corporations and insurance companies; (8) associate itself as a partner in the conduct of a private business in which it has no authority or power to engage, and in so doing would be acting *ultra vires* and contrary to the Constitution and laws of the State."

And the plaintiff prayed that the County Board of Education of Wake County be enjoined and restrained from accepting the policy of insurance or any other policy of insurance issued by any mutual fire insurance company, and from paying or undertaking to pay the premiums under any policy of insurance issued by said defendant insurance companies or doing any act or assuming any liability to give effect to such fire insurance policies, and that the insurance company, its officers and agents, be forever enjoined and restrained from accepting any payment of premiums under said contract of insurance or asserting any liability or obligation against or on the part of said County Board of Education, or by virtue of said policies or contract of insurance, or asserting the membership of said defendant County Board of Education in any of said defendant fire insurance companies, or doing any act or thing to give effect to such policy or contract of insurance.

In answer, the defendants, and each of them, "admit that all of the losses and expenses of the defendant companies are and must be paid out of moneys derived ultimately from the amounts collected from their member policyholders, past, present, and future; but further say that a large part of the moneys available for the payment of such losses and expenses are derived directly from the income from the investment of a portion of the premiums collected from their members and accumulated as reserves, guaranty funds, and surplus, the principal of which funds, now aggregating a large amount in the case of each of the defendant companies, as well as the income therefrom, are at all times available, if needed, for the payment of losses and expenses of the said companies. They admit that the County Board of Education of Wake County and its officers intend to accept said policy of insurance and pay the cash premium of $12.35, and assume a contingent liability to assessment for an equal and additional amount, but it is denied that such action on their part will result in the damage or injury of plaintiff or of any other taxpayer of the county of Wake. . . . They admit that the acceptance of said fire insurance policy and the payment of the cash premium will and does make the County Board of Education of the County of Wake a member of each of said defendant mutual fire insurance companies, but not a stockholder or partner in or with any of them. . . . Further answering, the defendants, and each of them, assert that the present condition and record of all and each of said defendant companies justify the trustees and officers of the defendant and school dis-

trict, in the exercise of a sound administrative discretion, in applying for and accepting the policy or policies of which complaint is made in said petition, and thereby obtaining for said school district a large saving in its insurance expense as to the property covered by said policy or policies, and undertaking as consideration for such indicated savings the possible payment under certain extraordinary conditions of the further premium in the form of assessment which can under no condition exceed the amount of the cash premium."

The judgment of the court below is as follows: "This cause coming on to be heard before his Honor, R. Hunt Parker, judge, and being heard upon the restraining order heretofore made by his Honor, Clawson L. Williams, enjoining the defendants herein from making any payment of the premiums under the policy of insurance set forth in the complaint or asserting any liability or obligation against or on the part of the County Board of Education of the County of Wake under and by virtue of said policy or contract of insurance, or asserting the membership of said County Board of Education of Wake County in any and all of said defendant fire insurance companies, or doing any act or thing to give effect to said policy or contract of insurance and from the payment of the premium alleged to be due thereon, and after argument by counsel representing the plaintiff and the defendants, the court being of the opinion that said temporary restraining order should be vacated, it is accordingly ordered and judged: That the temporary restraining order heretofore issued in the above entitled cause be and the same is hereby set aside and vacated; that the defendants go hence without day and recover their costs of the plaintiff. R. Hunt Parker, Judge presiding over courts of the 7th Judicial District."

The plaintiff excepted, assigned error to the judgment as signed, and appealed to the Supreme Court.

*Manning & Manning and Jones & Brassfield for plaintiff.*
*John W. Hinsdale and Eugene Quay for defendants.*

CLARKSON, J. The many objections made by plaintiff to the contract made between the County Board of Education of Wake County, N. C., and the three defendants, mutual fire insurance corporations, cannot be sustained.

The County Board of Education of Wake County insured in these corporations a two-story brick building, known as Green Hope School, in White Oak Township in said county. The amount of insurance was $2,000, and for one year, from 1 April, 1935, to 1 April, 1936. The language of the policy applicable to the controversy: "In consideration of the stipulations herein named and of twelve and 35/100 dollars

3—209

premium do insure Board of Education of Wake County, . . . This policy is issued on a mutual basis for cash premium with a contingent liability in an amount as set forth in the by-laws of the respective companies on page three hereof, and by the acceptance of this policy the policyholder becomes a member of each of said companies, subject to the provisions of the by-laws thereof for all purposes. In determining the contingent liability of a policyholder in each company, the total premium of this policy shall be prorated among the companies in proportion to their several liabilities hereunder. . . . This corporation shall have no capital stock. Every person, corporation, partnership, or association named as the insured in a policy issued by the corporation shall be a member of the corporation while such policy is in force. . . . The board of directors shall, from time to time, determine which, if any, of the policies or classes of policies issued by the corporation shall be subject to a contingent mutual liability, and shall determine the maximum amount of such liability, *which maximum amount shall in no case exceed a sum equal to the amount of one annual premium on the policy."*

N. C. Code, 1935 (Michie), sec. 6274, gives the Insurance Commissioner authority over all insurance companies, and the same must be licensed and supervised by him. Section 6287 is as follows: "All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein; and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof."

There is no question but that the defendant insurance companies have complied with the conditions of admission (section 6411) and have a right to do business in the State. The provisions of mutual insurance companies are found in Article 8, "Mutual Insurance Companies," secs. 6346 to 6355, inclusive. Section 6348 provides, in part: "Every person insured by a mutual fire insurance company is a member while his policy is in force, entitled to one vote for each policy he holds. . . . A person holding property in trust may insure it in such company, and as trustee assume the liability and be entitled to the rights of a member, but is not personally liable upon the contract of insurance," etc.

Section 6351 was amended by chapter 89, Public Laws of 1935, and is as follows: "The directors of a mutual fire insurance company may from time to time, by vote, fix and determine the amount to be paid as a dividend upon policies expiring during each year. Each policyholder is liable to pay his proportional share of any assessments which are made by the company in accordance with law and his contract on account of losses incurred while he was a member, if he is notified of such assessments within one year after the expiration of his policy. Any

mutual fire insurance company doing business with a fixed annual premium may in its by-laws and policies fix the contingent liability of its members for the payment of losses and expenses not provided for by its cash funds, which contingent liability must not be less than a sum equal to the cash premium written in his policy, and in addition thereto. The by-laws may also provide for policies to be issued for cash premiums without contingent liability of policyholders; provided, that no mutual fire insurance company shall issue any policy without contingent liability until and unless it possesses a surplus of at least one hundred thousand dollars. The total amount of the liability of the policyholder must be plainly and legibly stated upon the back of each policy. Whenever any reduction is made in the contingent liability of members, it applies proportionally to all policies in force. Provided, this section shall not apply to farmers mutual fire insurance companies."

We think the only material question presented on this record: Has the County Board of Education of Wake County a right to make the contract complained of by plaintiff? We think so. The plaintiff contends that it cannot "lend its credit to a private corporation contrary to the Constitution of the State." It contends that it impinges the following sections of the Constitution of North Carolina: Art. V, sec. 4, in part: "And the General Assembly shall have no power to give or lend the credit of the State in aid of any person, association, or corporation, except to aid in the completion of such railroads as may be unfinished at the time of the adoption of this Constitution, or in which the State has a direct pecuniary interest, unless the subject be submitted to a direct vote of the people of the State, and be approved by a majority of those who shall vote thereon." Art. VII, sec. 7: "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith, or lend its credit, nor shall any tax be levied or collected by any officer of the same except for the necessary expenses thereof, unless by a vote of a majority of the qualified voters therein."

We cannot agree with plaintiff's contention. We think that the County Board of Education of Wake County did not lend its credit, but purchased the $2,000 of insurance from defendants for a year by paying them $12.35 and agreeing to pay them an amount on certain contingencies—the maximum not to exceed $12.35. It did not enter into private business, but purchased the insurance to protect its property. This was in the sound discretion of the board.

"By becoming a member of a mutual insurance company a municipality does not become the owner of any stock or bonds of the company in violation of a constitutional provision prohibiting any municipality from owning any stock or bonds of any association or corporation; and by giving premium notes for the payment of assessments to meet losses

incurred by such an insurance company, the municipality does not loan its credit to the company in violation of a constitutional prohibition against doing so. *French v. Milville,* 66 N. J. L., 392, 49 Atl., 465." Colley's Constitutional Limitations, Vol. 1 (8th Ed.), p. 469—note. Affirmed 67 N. J. L., 349, 51 Atl., 1109. *Downing v. School Dist. of Erie,* 297 Pa., 474, 147 Atl., 239; *Dalzell v. Bourbon Board of Education* (1921), 193 Ky., 171, 235 S. W., 360.

"There is an essential difference between stock and mutual insurance companies. A stock insurance company is a corporation with a capital stock, organized for the profit of its stockholders, who need not be policyholders. Its policies are issued solely upon the credit of its capital stock to persons who may be entire strangers to the corporation, who acquire by reason of their policies no right of membership and no right to participate in its profits, and who subject themselves to no liability by reason of its losses. In all these respects it differs materially from a mutual company, which has no stock or stockholders." 32 C. J., 1020.

Under the purchase of the insurance the board in no way became a stockholder or partner, nor did it incur any liability for debts. It is a mutual company, without stock or stockholders. Its policyholders are its only members. A stockholder is the owner or holder of shares in a corporation having a capital stock represented by shares. The policyholders can in no way become liable for the debts of the corporation. For the insurance purchased, it paid $12.35, and its contingent liability is limited to the maximum of the cash payment, in the present case to $12.35. The County Board of Education had full power and authority to make the contract and it was in its sound discretion. Section 6351, *supra.* The board is a corporation and an agency of the State. N. C. Code, 1935 (Michie), sec. 5419. *Board v. Board,* 192 N. C., 274; *Hickory v. Catawba Co.,* 206 N. C., 165.

The county of Wake and the County Board of Education of Wake County are administrative units in the public school system of the State. In *Julian v. Ward,* 198 N. C., 480 (482), it is said: "Under these (N. C. Const., Art. IX, secs. 1, 2, and 3) and other pertinent sections of the Constitution, it has been held in this jurisdiction that these provisions are mandatory. It is the duty of the State to provide a general and uniform State system of public schools of at least six months (now eight months—Public Laws 1935, ch. 455) in every year wherein tuition shall be free of charge to all the children of the State between the ages of six and twenty-one. It is a necessary expense and a vote of the people is not required to make effective these and other constitutional provisions in relation to the public school system of the State. Under the mandatory provision in relation to the public school system of the State, the financing of the public school system of the State is in the discretion of

the General Assembly by appropriate legislation either by State appropriation or through the county acting as an administrative agency of the State. *Lacy v. Bank,* 183 N. C., 373; *Lovelace v. Pratt,* 187 N. C., 686; *Frazier v. Commissioners,* 194 N. C., 49; *Hall v. Commissioners of Duplin,* 194 N. C., 768." *Elliott v. Board of Equalization,* 203 N. C., 749.

By the School Machinery Act of 1935, salaries, plant operation, and other major items of the current expense fund were transferred from the County Board of Education to the State Fund Administration, but maintenance expense and fixed charges, including insurance, are still left to the County Board of Education. Public Laws N. C., 1935, ch. 455, sec. 9 (pp. 760-761).

The fixed charges indicated in N. C. Code, 1935 (Michie), sec. 5596 (a) 5, including insurance, are consequently "necessary expenses" of the County Board of Education, and the limitations of Art. VII, sec. 7, of the Constitution do not and cannot apply to the insurance of the regular public schools of the county which form a part of the State-wide system.

The purchase of the insurance was for a public and not a private purpose, and a necessary expense. Ordinarily, the Board of Education has discretion in matters of this kind, and usually its action is not reviewable.

In *Newton v. School Committee,* 158 N. C., 186 (188), citing a wealth of authorities, it is said: "Courts may not interfere with discretionary powers conferred on these local administrative boards for the public welfare, unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion." *Clark v. McQueen,* 195 N. C., 714 (716); *Crabtree v. Board of Education,* 199 N. C., 645 (650).

The plaintiff in his brief says: "The general law of this State is silent as to insuring property of schoolhouses in this State. Section 5419 incorporates the Board of Education and gives it general powers to purchase and hold real and personal property, buildings, schoolhouses, etc. Section 5596 provides: 'The May budget prepared by the County Board of Education shall provide for three separate school funds'; and subsection 5 of section (a) is as follows: 'Fixed charges rent, insurance, and other necessary fixed charges.' "

"Nowhere in the act creating the County Board of Education, or in any other legislative authority, has the County Board of Education been given the right to become a member and assume a contingent liability in a mutual fire insurance company." We think plaintiff takes too narrow a view of section 6351, *supra,* and the subject.

When the budget is set up by the County Board of Education, if it desires to purchase insurance in mutual companies like the defendants', it can show the cash amount to do so and the contingent amount not

exceeding the cash premium. This matter is discretionary with the County Board of Education.

The plaintiff cites section 6351, *supra,* and says: "We submit that the Legislature has carefully avoided granting to the County Board of Education or any other municipal corporation the authority to insure in mutual fire insurance companies. It has granted the right to trustees to become members of such mutual fire insurance companies, but it has declined to give its consent to a Board of Education or any other governmental agency to become a member of a mutual fire insurance company," etc.

We do not think this was necessary in specific language. Reading the section as a whole and giving it a liberal construction, it opens up the door to these mutual companies and says how they shall operate. The mutual companies are bound by the statute which is in force at the time of the execution of the contract and becomes part of the intention of the parties. *Bateman v. Sterrett,* 201 N. C., 59; *Headen v. Ins. Co.,* 206 N. C., 270 (272).

Section 6348 is an enabling statute to protect a trustee from liability. It has nothing to do with the rights asserted here by the County Board of Education, nor is the County Board of Education restricted from purchasing insurance in a mutual company; but section 6351 provides the terms and method of how mutual insurance can operate in this State. Those who purchase mutual insurance have their rights fixed.

For the reasons given, the judgment of the court below is

Affirmed.

DEVIN, J., took no part in the consideration or decision of this case.