340 P.2d 200

STATE of Arizona et al., Appellants,

v.

NORTHWESTERN MUTUAL INSURANCE COMPANY, a corporation, et al., Appellees.

No. 6400.

Supreme Court of Arizona.

June 4, 1959.

Robert Morrison, former Atty. Gen., Newman W. White and Ed W. Hughes, Asst. Attys. Gen., on the briefs, for the State and others.

Jennings, Strouss, Salmon & Trask, Phoenix, for W. W. Dick and Phil A. Isley.

Stockton & Karam, Phoenix, John S. Hamilton, Jr., Chicago, Ill., Garl Watkins, Seattle, Wash., and Nicholas S. Kiefer, Chicago, Ill., for appellees.

John W. Corbin, Glendale, amicus curiae, for Housing Authority, City of Glendale, and Housing Authority for City of Phoenix; Orme & Orme, Phoenix, of counsel.

BERNSTEIN, Justice.

This is an action brought by the Northwestern Mutual Insurance Company (here

inafter referred to as "plaintiff") for a declaratory judgment that a fire insurance policy it had issued to School District No. 14 of Maricopa County was validly contracted by the School District. The Treasurer and School Superintendent of Maricopa County, proceeding separately from the other defendants, obtained an order permitting the joinder of three other mutual fire insurance companies as cross-defendants, and counterclaimed against plaintiff and all other mutual fire insurance companies as a class for a declaration that all such policies were, or would be, invalid. The position taken by the School Superintendent of Maricopa County in refusing to authorize payment of the premium due was, and the position of all appellants here is, that a contract with a mutual insurance company is prohibited by our State Constitution and that, accordingly, the statute authorizing such a contract, A.R.S. § 20–715(B), providing that "Any * * * government or governmental agency, state or political subdivision thereof, * * * may be a member of a domestic, foreign or alien mutual insurer," is invalid. The constitutional provision relied on, section 7 of Article IX, A.R.S., is that:

"Neither the State, nor any county, city, town, municipality, or other subdivision of the State shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, associa-tion, or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or become a joint owner with any person, company, or corporation, except as to such ownerships as may accrue to the State by operation or provision of law."

After receipt of evidence concerning the nature of plaintiff and other mutual insurance companies doing business in Arizona, the court below rendered judgment in favor of plaintiff and against the county officials' counterclaim, ruling generally that "the insurance of public property in Arizona under nonassessable policies or contracts of insurance by * * * mutual fire insurance companies admitted to do business and write insurance in Arizona, is authorized by the statutory law of the State of Arizona, and that such statutory law offends no provision of the Arizona Constitution." With that judgment and ruling we agree.

It is first in order that we view section 7 of Article IX of our Constitution in its historical setting, mindful of the circumstances which augured its birth, in order to comprehend as precisely as we can the significance of the written words. The court has previously described this history, reflected in constitutional inhibitions enacted in some forty-three states, in the words of the Supreme Court of Montana (from which state's constitution, Art. 13, section 1, it has been noted, we adopted

our own constitutional provision [see handwritten note of Mr. Homer R. Wood in his collected propositions introduced at the Constitutional Convention, Substitute Proposition No. 106, Nov. 16, 1910, p. 4, now on file in the State Library]) in Thaanum v. Bynum Irr. Dist., 72 Mont. 221, 227, 232 P. 528, 530, as follows:

"It represents the reaction of public opinion to the orgies of extravagant dissipation of public funds by counties, townships, cities, and towns in aid of the construction of railways, canals, and other like undertakings during the half century preceding 1880, and it was designed primarily to prevent the use of public funds raised by general taxation in aid of enterprises apparently devoted to *quasi* public purposes, but actually engaged in private business."

See Day v. Buckeye Water Conservation & Drainage Dist., 28 Ariz. 466, 473, 237 P. 636, 638; Valley National Bank of Phoenix v. First National Bank of Holbrook, 83 Ariz. 286, 294, 320 P.2d 689, 694. See also Pleasant Township v. Aetna Life Ins. Co., 138 U.S. 67, 69, 74, 11 S.Ct. 215, 34 L.Ed. 864; Commonwealth v. Walton, 182 Pa. 373, 376, 38 A. 790, 791.

█ Thus described, the evil to be avoided was the depletion of the public treasury or inflation of public debt by engagement in non-public enterprises. But it was never thought that the state and local governments should be prohibited from dealing with private enterprises, as, for instance, in acquiring goods and services required to furnish and sustain governmental functions. It is not now suggested that the School District is forbidden to contract and pay for fire insurance on its buildings. Nor is it suggested that, in contracting with plaintiff, the School District had in mind any purpose other than obtaining fire insurance protection; and, despite some argument concerning contingent liability, discussed infra, there was no serious showing of any dire consequence with respect to the public treasury or debt which might result from the contested contract. Instead, appellants' major contention is that, regardless of the legitimate purpose of the transaction and the lack of proscribed effect resulting from it, insurance cannot be acquired from a mutual insurance company because, merely by acquiring the insurance, the involvement of the purchaser necessarily is greater, in a technical sense, than that which the Constitution permits.

Although we recognize that technicalities often may reveal hidden realities, a proper approach to such a case is indicated by this court's recent decision, involving the same constitutional provision, in Valley National Bank of Phoenix v. First National Bank of Holbrook, supra. There the court considered the constitutionality of time deposits by the state or local governments for the accrual of interest in fa-

vor of the depositors, with the necessary effect, nevertheless, of monies being made available to the banks for their use. Citing Almond v. Day, 197 Va. 782, 91 S.E. 2d 660, for the proposition that the "underlying and activating" purpose of a transaction is "the vital and controlling factor by which its validity or invalidity shall be determined", it was held that time deposits were not prohibited by the "extension of credit inhibition" contained in section 7 of Article IX of our Constitution. [83 Ariz. 286, 320 P.2d 695.] Cf. Udall v. State Loan Board, 35 Ariz. 1, 273 P. 721. We are instructed, then, at least to strive for a panoptic view of the constitutional facts of a particular transaction and to consider the significance of incidental features according to their appearance in proper perspective.

Second, we think it noteworthy that the highest courts of eleven states have considered the instant problem in relation to constitutional provisions like, or with a similar design to, our own. Ten, including Montana, have concluded that no constitutional prohibition was violated. Louisville Bd. of Ins. Agents v. Jefferson County, Ky., 309 S.W.2d 40; McMahon v. Cooney, 95 Mont. 138, 25 P.2d 131; Clifton v. School Dist. No. 14, 192 Ark. 140, 90 S.W. 2d 508; Miller v. Johnson, 4 Cal.2d 265, 48 P.2d 956; Fuller v. Lockhart, 209 N.C. 61, 182 S.E. 733; Burton v. School Dist. No. 19, 47 Wyo. 462, 38 P.2d 610; City of Macon v. Benson, 175 Ga. 502, 166 S.E. 26; Downing v. School Dist. of City of Erie, 297 Pa. 474, 147 A. 239; Johnson v. School Dist. No. 1 of Multnomah County, 128 Or. 9, 270 P. 764, rehearing denied 128 Or. 18, 273 P. 386; French v. Mayor, etc., of City of Millville, 66 N.J.L. 392, 49 A. 465, affirmed 1902, 67 N.J.L. 349, 51 A. 1109. Contra: Lewis v. Independent School Dist. v. City of Austin, 139 Tex. 83, 161 S.W.2d 450. One other state supreme court has ruled on the question only with respect to a contract of insurance which necessarily provided for the unlimited liability of the insured, holding that such a contract was prohibited. School Dist. No. 8, Twin Falls County v. Twin Falls County Mut. Fire Ins. Co., 30 Idaho 400, 164 P. 1174.

Against that background we may turn to appellants' specific arguments.

The first constitutional proscription on which some of the appellants rely forbids the loaning of credit in aid of, or the making of any donation or grant to, any association or corporation. Appellants' arguments are that: (1) A mutual fire insurance company may, and customarily does, add some monies collected as premiums to its surplus and returns some to its policyholders (such payments termed "dividends") every year, so that, while the money is kept by the company, it is loaned or given to it. (2) Under the law of the State of Washington, plaintiff, for instance, may

not be authorized to issue nonassessable policies (depending on the interpretation of a Washington constitutional provision and the state of plaintiff's surplus at the time a policy is issued), in which case any policy issued might be assessable despite its representation and, to that extent, the credit of the state would be loaned in aid of the company. Neither argument is factually persuasive.

With regard to the first argument, there was no showing that premium rates are determined by any standard other than what is required to provide a sound fund for the payment of compensable losses and normal insurance administration. A surplus, like a reserve fund, would seem to be proper, and may be essential, to provide against catastrophe, the possibility of which gives rise to the very existence of the company. As for the payment of dividends, there is no requirement that they must, and no assurance that they will, be paid. Whether or not dividends are paid, the original premium agreed to, so far as is shown, is no more than consideration for the insurance based on its estimated cost, subject to later downward adjustment upon a review of eventualities. Cf. Rhine v. New York Life Insurance Company, 273 N.Y. 1, 6 N.E.2d 74, 108 A.L.R. 1197. In short, in light of the factual showing made, if the state does not lend its credit when it purchases insurance from a stock company (and particularly when it pays in advance), it does not do so when it purchases from a mutual company.

Appellants' second argument is based, in the main, on a *Constitutional* and a statutory provision of the State of Washington, under whose laws plaintiff was, and is, organized. The Washington State Constitutional provision, Amendment 16, provides that:

"* * * Each stockholder of any banking or insurance corporation or joint stock association shall be individually and personally liable equally and ratably, and not one for another, for all contracts, debts, and engagements of such corporation or association accruing while they remain such stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares."

We think it plain that that provision applies only to stock companies with stockholders, not to a membership corporation like the plaintiff, and we are advised of no decision of any Washington court to the contrary. If that provision were applicable to plaintiff, the statutory provision relied on, Washington Code, section 48.09.-270, quoted infra, permitting the issuance of nonassessable policies, would be unconstitutional, a result which this court would hardly anticipate. The State of Washington statutory provision referred to provides that:

"A domestic mutual insurer on the cash premium plan, after it has established a surplus not less in amount than the minimum capital funds required of a domestic stock insurer to transact like kinds of insurance, and for so long as it maintains such surplus, may extinguish the contingent liability of its members to assessment and omit provisions imposing contingent liability in all policies currently issued."

See also Ore.Rev.Stat. section 744.430(4). Appellant's reading of the statute leads to the conclusion that if, perchance, a school district should contract with some mutual insurance company whose surplus at the time was less than what the statute in the state of its incorporation required for the issuance of nonassessable policies, the contract, even despite a contrary representation on its face, would be assessable. In the event of the liquidation of the company and insolvency, that might be so (although the ultimate liability of the school district would depend on whether the contract afforded a personal defense to such an assessment). See Pink v. A.A.A. Highway Express, 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152; Annotation, 175 A.L.R. 1419. But see Johnson v. School Dist. No. 1 of Multnomah County, supra; Moreland v. Knox, Tex.Civ.App., 268 S.W.2d 744. But so far as this case is concerned, the argument is entirely hypothetical. The trial judge found as a fact, not here disputed, that plaintiff and all other mutual fire insurance companies admitted to do business in Arizona were authorized to write nonassessable policies and that none of them wrote any other kind of policy. The Insurance Commissioner of the State of Washington, indeed, has issued a certificate provided for by statute that plaintiff was authorized to issue nonassessable policies. In the circumstances, there is no occasion for us to rule whether a contract which did provide for contingent liability would be constitutional.[1]

■ The argument made by all the appellants is that purchasing insurance from a mutual company is forbidden because of the constitutional prohibition against becoming a shareholder in any company or a joint owner with any person. That argument emphasizes certain rights of the policyholder against the management of the company, or with re-

---

1. We note, however, that even where contingent liability was established, so long as such liability was limited to a specified reasonable amount, other courts have ruled that no unconstitutional lending of credit occurred and that, instead, to the extent that the mutual insurance company did not collect the full amount of the contingent liability, it extended credit to the insured. Clifton v. School Dist. No. 14; Miller v. Johnson; Fuller v. Lockhart; Burton v. School Dist. No. 19; Downing v. School Dist. of City of Erie; French v. Mayor, etc., of City of Millville, all supra. But see Johnson v. School Dist. No. 1 of Multnomah County, supra.

spect to the assets of the company, which are similar to the rights of a shareholder in a corporation or to the rights of a joint owner. Without attempting an analysis of all similarities and dissimilarities between a shareholder or joint owner and a member of a mutual company, one dissimilarity stands out as decisive. Unlike a shareholder or a joint owner, a member of a mutual insurance company has no ownership interest which in itself can be transferred to another. Upon the cancellation or cessation of his policy, the member retains no interest whatever. See Louisville Bd. of Ins. Agents v. Jefferson County Board of Education, supra, 309 S.W.2d at page 41; Huber v. Martin, 127 Wis. 412, 105 N.W. 1031, 3 L.R.A.,N.S., 653; First Nat. Bank of Cartersville v. State Mut. Life Ins. Co., 163 Ga. 718, 724, 137 S.E. 53, 55, 51 A.L.R. 1524; Commonwealth Mut. Fire Ins. Co. v. Hayden, 60 Neb. 636, 640, 83 N.W. 922, 924, order set aside on other grounds 61 Neb. 454, 85 N.W. 443. We think that such membership, realistically considered, not undertaken for the purpose, and not entailing the risk, of investment, is far removed from the constitutional prohibitions specified.

Accordingly, from whatever perspective, we conclude that the judgment should be, and it hereby is, affirmed.

PHELPS, C. J., and STRUCKMEYER, UDALL and JOHNSON, JJ., concur.