174 So.2d 3 (1965)
DADE COUNTY, FLORIDA, BOARD OF PUBLIC INSTRUCTION, a body corporate and politic under the laws of the State of Florida, Appellant,
v.
MICHIGAN MUTUAL LIABILITY COMPANY, a mutual insurance company organized under the laws of the State of Michigan, Hartnett, Inc., a Florida corporation, and George Insurance Agency, Inc., a Florida corporation, Appellees.
No. 33559.
Supreme Court of Florida.
April 14, 1965.
*4 Bolles, Prunty, Martin & Goodwin, George C. Bolles and Kenneth L. Ryskamp, Miami, for appellant.
Patton & Kanner, Welsh, Cornell, Pyszka & Carlton, Samuel J. Kanner and William H. Morrow, Jr., Miami, for appellees.
THOMAS, Justice.
This litigation was instituted in the Circuit Court of Dade County and came here under the provisions of Sec. 4(2) of Art. V of the Constitution, F.S.A. providing for direct appeals from final judgments or decrees construing controlling provisions of the Constitution.
The parties to the controversy stipulated to the facts and issues upon which the case was determined so at the outset we give a resume of that agreement.
The appellees, Michigan Mutual Liability Company, Hartnett, Inc., and George Insurance Agency, Inc., are authorized to engage in the insurance business in the State of Florida. In 1963 the appellant, Board of Public Instruction, through an advertisement in the local newspaper, sought bids for various kinds of liability insurance listed in the notice and Hartnett, Inc., and George Insurance Agency, Inc., acting as agents for Michigan Mutual Liability Company responded by submitting bids for the services. These were rejected on the lone ground that the insurance offered was that of a "mutual" company.
Upon declination of appellees' bid they brought suit for declaratory decree which culminated in a decree in their favor.
From these facts springs the question whether or not the Board was prevented by Sec. 10, Art. IX of the Constitution, from accepting the bid because the insurance policy would be issued by a mutual company. The pertinent inhibition of that part of the Constitution is that the State shall not "become a joint owner or stock-holder in any company, association or corporation."
Testing the contentions of the parties in the light of the stipulation, the circuit judge set out an analysis of the policy proposed to be issued and a comparison of its characteristics with joint ownership and stockholding denounced by the Constitutional provision.
He observed that no shares of stock are issued by the Michigan Mutual Liability Company but that the purchaser of a policy issued by it becomes a "member" of the company with the right to vote for directors although he has no voice in the operation of the corporation. The policyholder would have the right to receive such rebates on the policy as the loss experience of the company justified, however the policy would be non-assessable thereby relieving the policyholder from responsibility for any losses of the company.
This arrangement, thought the judge, was not one that would constitute the policyholder a part-owner or stockholder and amounted only to a simple purchase of an insurance policy for a fixed premium.
The court referred to the argument of the defendant, now appellant, that a policyholder in a mutual company is a part-owner of the insurance company because in event of failure of the company prior to expiration of the contract he becomes a debtor of the insurer if the full premium has not been paid while a policyholder of a stock company would become a creditor if the full premium had been paid.
*5 This theory was rejected by the circuit judge who held point-blank that there would be no violation of the cited Constitutional provision by the purchase by appellant of insurance in a mutual company.
It seems fitting, before proceeding, to look to the character of the insurer and the proposed contract of insurance to determine the nature of the relationship of insured and insurer which would arise from an insurance contract.
The by-laws adopted pursuant to the Articles of Re-Incorporation of the Michigan Mutual Liability Company contain in Sec. 1 of Art. II the provision that a policyholder is a "member" of the company and in Sec. 1 of Art. V of the by-laws that the Board of Directors shall have power to fix from time to time the amount of unabsorbed premiums, premium deposits, savings and dividends to be returned to policyholders. While the policyholders do not have a direct voice in the operation of the company, they are empowered to vote for directors, Articles V and VI of Articles of Re-Incorporation, who exercise the powers just enumerated.
Moreover, under Article VII of the Articles of Re-Incorporation the Articles may be amended by a vote of two-thirds, so the policyholders may express a preference in this procedure.
In the proposed policy there is a stipulation that the policy is non-assessable; that the policyholder is a "member" of the company and shall participate to the extent determined by the board of directors in the distribution of dividends. There also appears, in Condition 19, the provision that a policyholder is a "member" of the company and entitled to vote at all meetings.
The appellant leans heavily on the language of this court in New York Life Insurance Company v. Kincaid, 122 Fla. 283, 165 So. 553, in which it was written that the New York Life Insurance Company was a "mutual" company and the holder of a policy in the company was more than a mere policyholder; he also "was a Stockholder * * *." (Italics supplied.) Further in the opinion to which, incidentally, there was no dissent, the statement with reference to this status of the insured was repeated.
At first glance it would appear that the language we have quoted from the Kincaid case would require a holding now that the Board of Public Instruction would become a stockholder under the proposed insurance contract because Kincaid was said in the cited case to have attained that status. But upon study of the present case we do not feel bound to extend the holding to this litigation. There is great disparity between the factual situations in the two cases. In the cited case the vital questions were said to be whether or not the insurance company had correctly "lapsed" the policy of an individual, whether or not the policyholder had misrepresented his physical condition and whether or not the policyholder's acceptance of a certain check amounted to full payment of all his claims against the company.
In the instant case we are faced with an interpretation of basic law designed to protect public monies. It is, to repeat what we said at the outset, this construction which gives this court the power to decide the case.
The comment in the cited case that the policyholder was a stockholder since the life insurance company was "a mutual company" appears to us obiter dictum and not controlling here.
Although the provisions of the proposed policy are indicia of ownership and they as well as the pronouncement of this court in the cited case lend some strength to appellant's position we think, upon scrutiny, that a conclusion for which appellant contends would not, in view of the language of the Constitutional prohibition and the purpose of the transaction itself, be logical.
Reading the whole section, it is patent that the design of it was to keep *6 the State out of private business; to insulate State funds against loans to individual corporations or associations and to withhold the State's credit from entanglement in private enterprise. While some elements of stockholdership are present in the relation that would be created by issuance of the policy, they would be purely secondary and more apparent than real.
The primary purpose of securing the insurance is protection as, indeed, is all insurance. There is no indication of investment. And we think the reference in the by-laws of insurer to "dividends" and the participation of the policyholder in "unabsorbed premium, premium deposit, savings * * * [and] dividends," for all practical purposes has to do with rebates which may, or may not, be made to one securing the insurance protection. In brief, the appellant, if the circumstances warrant, will receive a rebate and, meanwhile will have protection, for a fixed amount, without the possibility of further cost by assessment.
It seems to us this is a far cry from the relation of a corporation and a stockholder in the commonly accepted use of that term. No risk is run by purchase of the insurance protection and no interest is obtained in the insurer which can be negotiated. The only interest obtained by the insured other than protection, is the availability of rebates if the experience of the company justifies them. On the contrary if a deficit occurs, instead of a surplus, the insurance contract itself prohibits assessment.
From the briefs and our own research it appears that the great weight of authority supports the view that such mutual contracts are not violative of provisions such as those in Sec. 10 of Article IX of our Constitution. These holdings are typified by the decision of the Supreme Court of Arizona in State of Arizona v. Northwestern Mutual Insurance Company, 86 Ariz. 50, 340 P.2d 200. The court stated in its opinion, rendered in 1959, that the highest courts of eleven states had ruled accordingly. To the contrary is the decision of the Supreme Court of Louisiana in Public Housing Administration v. Housing Authority of Bogalusa, 242 La. 519, 137 So.2d 315.
We think it is a pertinent commentary to contrast conditions that were intended to be corrected by the Constitutional proscription in 1885, when temptation to finance private enterprises with public funds was rife with the circumstances surrounding the present search for bids for the furnishing of insurance by the Board of Public Instruction at the most advantageous price.
We align this Court with the majority of courts of last resort in the nation who have dealt with the problem and hold that the mutual insurance contracts are permissible.
The decree of the chancellor is affirmed.
DREW, C.J., and ROBERTS, THORNAL, O'CONNELL, CALDWELL and ERVIN, JJ., concur.